**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRYAN JAMES DENNISON,

Defendant-Appellant.

No. 04-1062

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 03-CR-197-MK)

Andrew A. Vogt, Assistant United States Attorney (John W. Suthers, U.S.
Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

Raymond P. Moore, Federal Public Defender, Denver, Colorado, for Defendant-
Appellant.

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and
**HENRY**, Circuit Judge.

**HENRY**, Circuit Judge.

Bryan James Dennison pleaded guilty in November 2003 to one count of

unlawful possession of a machine gun and aiding and abetting its possession, in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2. In his conditional plea agreement, Mr. Dennison reserved the right to appeal the district court's denial of his motion to suppress physical evidence and statements from a warrantless search. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's denial of Mr. Dennison's motion to suppress.

## I. BACKGROUND

At approximately 3:00 a.m. on January 21, 2003, James Dennison and Keith Allen were parked in an Englewood, Colorado apartment complex that had a high incidence of nighttime car theft. Mr. Dennison was in the driver's seat of his gold Ford truck with a "topper" shell; Mr. Allen was in the passenger's seat. The lights and engine were turned off. Officer Christian Contos, patrolling the area, pulled up alongside the truck and asked what the two men were doing. They told Officer Contos that they had lost the keys to a Chevy pickup and were waiting for a tow truck; the Chevy vehicle was in a parking lot "an extensive distance away." Rec. vol. I, doc. 59, at 2 (Dist. Ct. Order, filed Oct. 17, 2003) [hereinafter "Dist. Ct. Order"].

Officer Contos testified that he sensed "something didn't seem right" after the first encounter. Rec. vol. II, at 15-16 (Hr'g on Motion to Suppress, dated

Sept. 18, 2003). He drove around the apartment complex and returned to the parking lot approximately 20-30 seconds later. Mr. Dennison's truck, with its engine and lights now on, had moved closer to the Chevy truck to be towed. Officer Contos pulled up to the men again and got out of his patrol car, to further investigate and to "check and make sure [the Chevy was] their truck." *Id.* at 18. Mr. Allen mentioned that he had been involved in a "domestic" and was wanting to get the Chevy truck before his girlfriend came and damaged it. *Id.* at 19. After hearing Mr. Allen's explanation, Officer Contos remembered a recent police bulletin to watch for a gold station wagon in the vicinity of the apartment complex because the police wanted a driver or passenger for a domestic violence incident. Though the men were in a gold truck with a cab rather than a gold station wagon, Officer Contos concluded that Mr. Allen was the wanted suspect because of his admitted involvement in a "domestic" and the men's proximity to the area noted in the police bulletin.

Officer Contos, anticipating that Mr. Allen was "probably going to get arrested," requested identification from the two men. *Id.* at 20, 23-24. Mr. Dennison produced a driver's license, from which Officer Contos determined that Mr. Dennison had no outstanding warrants or other police alerts. Mr. Allen had no identification, but Officer Contos obtained a warrant check upon his full name. Officer Contos learned that Mr. Allen had four outstanding arrest warrants,

including a felony arrest warrant for a weapons violation. Officer Contos then called for backup assistance, and Officers Joseph Wilson and Nancy Schwan arrived shortly.

The officers ordered Mr. Allen to exit the truck, arrested him, and placed him in the back seat of a police car away from Mr. Dennison's truck; Officers Wilson and Schwan had their guns drawn during Mr. Allen's arrest. The officers then asked Mr. Dennison to step out of the driver's side because they considered it dangerous to execute a search incident to Mr. Allen's arrest if someone were still inside. Mr. Dennison was told that he was not under arrest, but officers performed a pat-down search and handcuffed him. According to Officer Contos, these steps were taken because Mr. Allen was wanted on a weapons violation and "officer safety dictates that [officers] err on the side of caution." *Id.* at 30.

Mr. Dennison refused consent to search his truck, but officers believed that they were authorized to perform a search incident to Mr. Allen's arrest. When Officer Wilson started searching the truck's cab, Officer Contos was standing next to Mr. Dennison, who was handcuffed, near the rear of the truck on the passenger's side. Officer Contos testified that when Officer Wilson began the search of the passenger compartment, Officer Schwan "was getting ready, if she hadn't already, to leave" the scene with Mr. Allen to do the domestic violence paperwork. *Id.* at 35.

-4-

Officer Wilson soon discovered a loaded shotgun on the back seat under a blanket. After this discovery in the back seat, Officer Contos shined his flashlight through a window of the topper shell and saw the vented barrel of a machine gun partially exposed under a blanket inside the cargo bed. *Id.* at 38. Officer Wilson next found a loaded handgun and drug paraphernalia in the front and back seats. Officers then determined that they had probable cause to arrest Mr. Dennison for drug and weapons charges and to conduct an inventory search of the entire vehicle. Mr. Dennison was arrested and placed in the patrol car; upon his arrest, officers impounded and inventoried the truck. After opening the locked topper shell, officers recovered in the cargo bed the machine gun that Officer Contos had earlier identified. A second machine gun was later found in a canvas case in the back floorboard of the back seat. Together, officers found five handguns, three rifles, three shotguns, and two machine guns in Mr. Dennison's truck.

Both Mr. Allen and Mr. Dennison were indicted and charged with unlawful possession of a machine gun and aiding and abetting its possession, in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2. Mr. Dennison filed a motion to suppress physical evidence and statements from the warrantless search. The district court denied the motion. It concluded that (1) the second encounter between Officer Contos and the two men was a lawful stop under *Terry v. Ohio*,

392 U.S. 1 (1968), and (2) the warrantless search was valid incident to Mr. Allen's arrest.

Mr. Dennison later pleaded guilty to the one-count indictment pursuant to a conditional plea agreement allowing him to appeal the district court's denial of his suppression motion. The district court sentenced Mr. Dennison to one month of imprisonment, followed by a three-year term of supervised release that includes eleven months of home detention. He timely appeals the district court's denial of his motion to suppress.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's determination of the reasonableness of a search and seizure under the Fourth Amendment. *United States v. Abdenbi*, 361 F.3d 1282, 1287 (10th Cir. 2004). We look at the totality of the circumstances in reviewing the denial of the motion to suppress. *United States v. Gay*, 240 F.3d 1222, 1225 (10th Cir. 2001). Furthermore, "we accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's determination." *United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001) (internal citation omitted). "Reviewing courts must also defer to the 'ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'"

*United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005) (quoting *United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996)).

### III. DISCUSSION

According to Mr. Dennison, the district court committed two separate errors when it denied his motion to suppress the two machine guns found in his truck. First, Mr. Dennison argues that the district court erred in finding that Officer Contos had reasonable suspicion to justify a *Terry* detention when he approached Mr. Dennison's truck the second time after a brief initial encounter. Second, Mr. Dennison contends that the district court erred when it concluded that the warrantless search of Mr. Dennison's truck was justified as a search incident to Mr. Allen's arrest.

### A.     Challenge to the second encounter

Mr. Dennison maintains that Officer Contos' second encounter with Mr. Dennison and Mr. Allen was an investigative detention not supported by reasonable suspicion. A lawful investigative detention of limited scope and duration does not require probable cause as long as the police officer has reasonable suspicion that the person seized is engaged in criminal activity. *Terry*, 392 U.S. at 30-31. An officer making a *Terry* stop "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The

Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal citation and quotation marks omitted).

The district court determined that Officer Contos' second encounter with Mr. Dennison and Mr. Allen was a lawful investigative detention under *Terry*. It noted that Officer Contos believed that "something wasn't right" after his first encounter with the men, Dist. Ct. Order at 6, and the district court made several factual findings in support of Officer Contos' concern of criminal activity:

1. "It was 3:00 in the morning, an unusual time for citizens to be waiting for a tow truck." *Id.*
2. "Mr. Dennison and Mr. Allen were seated in [Mr. Dennison's] Ford adjacent to an apartment parking lot which was the frequent target for nocturnal car theft." *Id.*
3. "The Ford did not have its lights or engine on [during the first encounter], was situated a substantial distance from the Chevy [truck to be towed], and the Chevy was not visible." *Id.*
4. During the first encounter, Mr. Dennison's truck was parked in such a way that it was "unlikely that it would have been visible to the tow truck." *Id.*
5. When Officer Santos returned, "the Ford had moved and had its lights on and the engine running." *Id.*

The district court erred, according to Mr. Dennison, when it cited the change of certain factors (e.g., his Ford truck being parked closer to the Chevy truck, with its lights on and engine running, during the second encounter) as further heightening Officer Contos' suspicion. He further maintains that the first

-8-

four factors, neither individually nor in combination, give rise to a finding of reasonable suspicion.

Even if each separate fact or observation leading to Officer Contos' second encounter "is not by itself proof of any illegal conduct," we consider whether the facts as a whole "amount to reasonable suspicion." *Sokolow*, 490 U.S. at 8; *see also Terry*, 392 U.S. at 22 (noting that "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation").

We agree with the district court that the officer's hunch that "something wasn't right" would not be sufficient by itself to support a finding of reasonable suspicion. Here, several specific facts taken together, however, warranted the additional investigation. Mr. Dennison's presence in a high-crime area is not, "standing alone," enough to provide reasonable suspicion, but it may be a "relevant contextual consideration" in a *Terry* analysis. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.* The parties do not dispute that, at 3 a.m., Mr. Dennison and Mr. Allen did not have keys to the Chevy truck to be towed, were "situated a substantial distance from the Chevy, and the Chevy was not visible." Dist. Ct. Order at 6.

The Supreme Court has stated that, in cases where "the conduct justifying

the stop was ambiguous and susceptible of an innocent explanation," "*Terry*

recognized that the officers could detain the individuals to resolve the ambiguity."

*Wardlow*, 528 U.S. at 125.  Viewing evidence in the light most favorable to the

district court's determination, the aggregate facts support Officer Contos'

reasonable suspicion that the men's initial explanation was not complete and that

criminal activity was afoot.  Officer Contos therefore could inquire, with the

second encounter, as to the identities of Mr. Dennison and Mr. Allen and validate

proof of the Chevy truck's ownership.

## B.      Challenge to the search of Mr. Dennison's truck

The district court found that the warrantless search of Mr. Dennison's truck

was valid (1) incident to Mr. Allen's arrest and (2) to ensure officer safety.

> Although Mr. Allen had been removed from the scene, the exigency for
> an immediate search remained.  *So long as Mr. Dennison remained at
> the scene*, and in view of the totality of the facts giving rise to Mr.
> Allen's arrest (one violent crime and one weapons violation), there were
> serious and continuing concerns as to the safety of the officers based on
> the possibility that there were weapons in the truck and that Mr.
> Dennison had access to them.

Dist. Ct. Order at 10-11 (emphasis added).  Officers could "infer that Mr.

Dennison could present a risk to officer safety and take necessary safety

precautions." *Id.* at 11.

Mr. Dennison now challenges each of the government's rationales to

validate the warrantless search of his truck:  (1) as a search incident to arrest; (2)

-10-

as a search justified by officer safety concerns; and (3) as a search in which officers independently found evidence in plain view.[1]

###### 1. Search incident to Mr. Allen's arrest

The district court concluded that the search of the cab was valid incident to the arrest of Mr. Allen. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a *contemporaneous* incident of the arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981) (emphasis added). This court has concluded, however, that "[a] warrantless search incident to arrest is not valid if it is 'remote in time or place from the arrest.'" *United States v. Lugo*, 978 F.2d 631, 634-35 (10th Cir. 1992) (quoting *Chimel v. California*, 395 U.S. 752, 764 (1969)). A search

---

[1]The government principally contended at oral argument that we affirm the district court's decision under the plain view doctrine. Under this doctrine, we cannot validate a warrantless seizure of the machine gun in the topper shell unless Officer Contos "was lawfully in a position from which to view the object seized in plain view." *United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994). Officer Contos was standing with Mr. Dennison near the back of the truck so that Officer Wilson could search the cab. However, the facts before us suggest that Officer Contos's "plain view" only occurred because of and after Officer Wilson's search of the passenger compartment. Therefore, we must first determine whether Officer Wilson's "initial intrusion" to search the cab was valid. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

We affirm the district court's decision on different grounds. *See Medina v. City & County of Denver,* 960 F.2d 1493, 1495 n.1 (10th Cir. 1992) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.").

incident to arrest is unlawful when a suspect is arrested, removed from the scene, and en route to the police station when the search of the arrestee's passenger compartment begins. *Id.* at 635.

Mr. Dennison and the government disagree about Mr. Allen's location when the search of Mr. Dennison's truck began. When asked about Mr. Allen's location as the search of the truck's cab started, Officer Contos responded ambiguously: "Officer Schwan was – had Mr. Allen; and she was getting ready, if she hadn't already, to leave to her station to do the domestic violence paperwork on Mr. Allen." Rec. vol. II, at 35. Though the district court validated the search as one incident to Mr. Allen's arrest, it did not resolve the dispute about his location when the search began. *See* Dist. Ct. Order at 10 ("It is . . . arguable that . . . the police car had left the scene [with Mr. Allen] before the search."); *id.* ("Although Mr. Allen had been removed from the scene, the exigency for an immediate search remained.").

"When factual issues are involved in deciding a motion, the court must state its essential findings on the record." FED. R. CRIM. P. 12(d). "While helpful to appellate review, Rule 12[(d)] does not require detailed findings of facts as long as the essential basis of the court's decision is apparent." *United States v. Toro-Pelaez*, 107 F.3d 819, 824 (10th Cir. 1997). In light of *Lugo*, the district court needed to make a finding as to Mr. Allen's location when the search

began to validate it as one incident to his arrest. Because the district court declined to resolve this issue, and we cannot find facts, we therefore cannot validate the search of the truck under this rationale.

2. Officer safety

The government also argues that the search of Mr. Dennison's cab was valid because of officer safety concerns and the exigencies in which the search occurred. Specifically, we analyze whether officers were justified to perform a protective sweep of Mr. Dennison's passenger compartment.

a. *Applicable Law*

Officers can conduct a protective search of a vehicle's passenger compartment for weapons during an investigative detention when officers have a reasonable belief that a suspect poses a danger. In *Michigan v. Long*, 463 U.S. 1032, 1036 (1983), officers stopped to investigate a car that had swerved erratically into a ditch. The vehicle's only occupant met the officers near the rear of the car and, after a repeated request, produced his license. The driver did not respond to a repeated request for the vehicle registration, and the officers testified that the driver appeared to be under the influence of something. When the driver began walking back toward the open door of his car, officers followed and observed a hunting knife inside the car. Officers then conducted a *Terry* protective pat-down, revealing no weapons. Another officer shined a flashlight

into the vehicle's interior to search for additional weapons, leading to a drug discovery.

The Supreme Court validated the protective search of the driver's passenger compartment under the principles articulated in *Terry*:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049 (quoting *Terry*, 392 U.S. at 21).

More generally, courts have noted the potential dangers of vehicle stops. This court recognized that

> [a]n officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation. The motorist must suspend his or her plans and anticipates receiving a fine or perhaps even a jail term. That expectation becomes even more real when the motorist or a passenger knows there are outstanding arrest warrants or current criminal activity that may be discovered during the course of the stop.

*United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc). Furthermore, "the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer." *Maryland v. Wilson*, 519 U.S. 408, 413 (1997).

Officer safety is "both legitimate and weighty," *Pennsylvania v. Mimms*,

-14-

434 U.S. 106, 110 (1977), and the Supreme Court has identified contexts "where the public interest is such that neither a warrant nor probable cause is required," *Maryland v. Buie*, 494 U.S. 325, 331 (1990). Officers may take steps to protect themselves and others, provided the measures "are not too intrusive" and "the government's strong interest in officer safety outweighs the motorist's interests." *Holt*, 264 F.3d at 1221. For example, an officer making a traffic stop may order both the driver and passengers to exit the vehicle pending completion of the stop because "the additional intrusion on the passenger is minimal." *Wilson*, 519 U.S. at 414-15; *Mimms*, 434 U.S. at 111. A police officer may also "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (referencing *Terry*, 392 U.S. at 30-31).

Aside from precedent governing officer safety concerns, we must also examine the Supreme Court's relevant case law addressing individualized suspicion and permissible inferences of a "common enterprise" between occupants of a vehicle. Mr. Dennison had no prior criminal record but was detained late at night in a high-crime area in conjunction with the arrest of a passenger with multiple arrest warrants.

In *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), the Supreme Court warned that "a person's mere propinquity to others independently suspected of criminal

activity does not, without more, give rise to a probable cause to search that person." Officers in *Ybarra* had a warrant to search a tavern and its proprietor but also searched customers in the tavern. The Supreme Court invalidated the search of Mr. Ybarra, a customer, because the government could not support his patdown "by a reasonable belief that he was armed and presently dangerous." *Id.* at 92-93. During the daylight search of the tavern, officers did not recognize Mr. Ybarra as a person with criminal history and did not have reason to believe that he would assault them; he "acted generally in a manner that was not threatening." *Id.* at 93. The requirement in *Ybarra* for probable cause "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another and or to search the premises where the person may happen to be." *Id.* at 91. *See also United States v. Di Re*, 332 U.S. 581, 587 (1948) (rejecting the argument "that a person, by mere presence in a suspected car, loses immunities from search of his person to which he otherwise would be entitled").

*Maryland v. Pringle*, 540 U.S. 366 (2003), however, distinguishes *Ybarra* and *Di Re* and allows officers under certain circumstance to find probable cause of a joint illegal enterprise absent particularized suspicion. In *Pringle*, an officer stopped a car for speeding at 3:16 a.m.; three occupants were in the car. When the driver opened the glove compartment to retrieve a vehicle registration, the

-16-

officer saw a large amount of rolled-up money. The driver consented to a search of the car, and officers found $763 in the glove compartment and several bags containing cocaine elsewhere. The three occupants offered no information about ownership of the drugs and money, and the officer arrested all three. The Supreme Court considered it "an entirely reasonable inference" that any or all occupants knew of or had control of the cocaine. *Id.* at 372. The Supreme Court went on to distinguish *Ybarra* because the three *Pringle* occupants "were in a relatively small automobile, not a public tavern." *Id.* at 373. Furthermore, "it was reasonable for the officer to infer a common enterprise among the three men," as the quantity of drugs and money suggested a likelihood of drug dealing. *Id.*

### b. *Analysis*

The officer safety concerns at issue with Mr. Dennison most closely resemble those in *Long*. Here, officers had probable cause to arrest Mr. Allen and to consider him armed and dangerous, but the government cannot demonstrate that Mr. Allen remained on the scene when the search of Mr. Dennison's truck began. At the time of Mr. Allen's arrest, officers had no probable cause to arrest Mr. Dennison. Therefore, we apply *Long's* reasonableness test to the removal of Mr. Dennison from his vehicle: did officers have a reasonable belief, based on specific and articulable facts and rational inferences from those facts, to consider

Mr. Dennison dangerous and able to access weapons, thus justifying a protective sweep of his passenger compartment? "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

We initially note that, prior to Mr. Allen's arrest and the truck search, Officer Contos had completed a background check on Mr. Dennison and discovered no arrest warrants. Mr. Dennison also contends that he (1) was cooperative with officers, (2) presented identification when requested, (3) did not challenge or threaten officers when Mr. Allen was arrested, and (4) remained non-confrontational and cooperative even after he was removed from his truck. Nonetheless, in light of the totality of circumstances, we conclude that officers did have reasonable and articulable suspicion of Mr. Dennison's threat to officer safety to justify the protective sweep of his truck's passenger compartment.

First, officers here had reason to believe that weapons may be found in Mr. Dennison's truck. Prior to Mr. Allen's arrest, officers knew that Mr. Allen had "about four" arrest warrants, including a felony arrest warrant for a weapons violation, and, importantly, admitted involvement with a "domestic" dispute earlier that evening. Rec. vol. II, at 26-27. Our court has recognized that "[r]esort to a loaded weapon is an increasingly plausible option" when a "motorist or a passenger knows there are outstanding arrest warrants or current criminal

-18-

activity that may be discovered during the course of the stop." *Holt*, 264 F.3d at 1223.  An officer on a routine stop "never knows in advance which motorists have that option by virtue of possession of a loaded weapon in the car." *Id.*

Second, we can easily distinguish this case from *Ybarra*, where the customer only happened to be at the bar when the warrant was conducted, because Mr. Allen and Mr. Dennison had a considerably stronger connection: Officer Contos found both men in Mr. Dennison's truck in an apartment complex lot at 3:00 a.m., allegedly waiting for a tow truck.  "[A] car passenger–unlike the unwitting tavern patron in *Ybarra*–will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999).  Like the vehicle occupants in *Pringle*, Mr. Dennison and Mr. Allen were seated in a "relatively small automobile," 540 U.S. at 373, where either individual could access weapons inside the passenger compartment.  Officers therefore could reasonably infer a common purpose or "enterprise" between the two men and believe that Mr. Dennison knew of Mr. Allen's arrest warrants and would want to conceal evidence of any wrongdoing.  Importantly, we also note that *Di Re*, *Ybarra*, and *Pringle* concerned probable cause to arrest another vehicle occupant; here, we need only determine whether officers had *reasonable suspicion* of Mr. Dennison's threat to officers to justify a protective sweep.

-19-

Third, the detention, arrest, and search occurred late at night in a high-crime area, and officers could not clearly tell whether Mr. Dennison had weapons in the vehicle within reach. While each factor independently does not establish reasonable suspicion, officers can consider these characteristics "among the relevant contextual considerations" in assessing threats to officer safety. *Wardlow*, 528 U.S. at 124. In *United States v. Shareef*, 100 F.3d 1491, 1506 (10th Cir. 1996), officers stopped three vehicles at 3:30 a.m. and reasonably suspected that one occupant was armed and dangerous. This court concluded that officers had a "reasonable belief that the [other vehicles' occupants] posed a danger" and found it relevant that (1) the defendants were traveling together and (2) "[p]erhaps most important, the police confronted the defendants in their cars, at night." *Id.* Like the officers confronting Mr. Dennison at night, the officers in *Shareef* "could not tell whether the defendants had weapons on their persons or within reach." *Id.*

Fourth, we acknowledge that Mr. Dennison was handcuffed near the back of his truck when Officer Wilson began searching the truck's cab, but this court has held that "the fact that the detainee is 'under the control' of officers does not eliminate the risk that he will gain access to a weapon." *United States v. Palmer*, 360 F.3d 1243, 1246 (10th Cir. 2004) (citing *Long*, 463 U.S. at 1051-52). Moreover, though the dazed suspect in *Long* was alone and in custody of two

-20-

armed officers near the rear of his vehicle, the Supreme Court concluded that "a *Terry* suspect in Long's position [might] break away from police control and retrieve a weapon from his automobile." *Long*, 463 U.S. at 1051.

Fifth, Mr. Dennison contends that officer testimony did not reflect safety concerns during his detention. This court, though, has reasoned that the test of officer safety is objective rather than subjective, and therefore the officer need not personally be in fear. *See United States v. Neff*, 300 F.3d 1217, 1222 (10th Cir. 2002) (rejecting the defendant's argument that no grounds for a *Terry* frisk existed "because there was no evidence in the record that the officers in fact feared for their safety").

Finally, we recently concluded under facts analogous to Mr. Dennison's search that officers had reasonable suspicion of potential danger to justify a detention. In *United States v. Maddox*, officers were serving an arrest warrant on a narcotics trafficker at a residence in a high-crime area. 388 F.3d 1356, 1359-60 (10th Cir. 2004). The defendant arrived at the residence and was detained for thirty minutes in front of the mobile home until officers completed the in-house arrest of the trafficker. We upheld the temporary, protective detention of the defendant on officer safety grounds because (1) officers were assisting in the arrest of a narcotics trafficker inside the residence; (2) the officer detaining the defendant outside knew the residence was in a "dangerous location;" (3) it was

getting dark; (4) the officer outside the residence was detaining eight individuals who had driven up to the scene of the arrest; and (5) the defendant had mysteriously reached under the seat of his truck as he pulled up into the driveway. *Id.* at 1366-67.

Like *Maddox*, officers here were assisting in the late-night arrest of a potentially dangerous suspect in a high-crime area. Though occupants in Mr. Dennison's truck did not outnumber officers, the scene remained dangerous; at 3:00 a.m., officers could not see inside Mr. Dennison's truck, and they knew that Mr. Allen had multiple arrest warrants. Because a *Long* investigation "at close range" requires an officer to make a "quick decision as to how to protect himself and others from possible danger," the Supreme Court does not require "that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Long*, 463 U.S. at 1052 (quoting *Terry*, 392 U.S. at 24, 28); *see also Thornton v. United States*, 124 S. Ct. 2127, 2137 (2004) (Scalia, J., concurring) ("When officer safety or imminent evidence concealment or destruction is at issue, officers should not have to make fine judgments in the heat of the moment.").

Viewing evidence in the light most favorable to the district court's determination, we conclude that officers had a reasonable suspicion that Mr. Dennison was dangerous and able to gain immediate control of weapons. This

reasonable belief of Mr. Dennison's threat to officer safety validated a protective sweep of the truck's cab. *See Long*, 463 U.S. at 1049. Officer Wilson testified that he discovered two rifles underneath a blanket in the back seat "within a few seconds" of starting the search of the passenger compartment. Rec. vol. II, at 75. He soon came upon additional handguns, rifles, and drug paraphernalia concealed in the cab. Despite the officers' belief that they were conducting a search incident to Mr. Allen's arrest, Officer Wilson found these items within the parameters of a protective sweep, in "the passenger compartment" of the truck where "a weapon may be placed or hidden." *See Long*, 463 U.S. at 1049. These quick discoveries provided probable cause to arrest Mr. Dennison on drugs and weapons charges and set in motion the impoundment, inventory search, and inevitable discovery of evidence that Mr. Dennison seeks to suppress.

## IV. CONCLUSION

We AFFIRM the district court's denial of Mr. Dennison's motion to suppress.