UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRANCE WILLIAM BROWN,

Defendant - Appellant.

No. 08-8086
(D.C. No. 08-CR-13-ABJ)
(D. Wyo.)

**ORDER & JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Terrance William Brown was convicted of being a

felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2). In the wee hours of the morning, a police officer pulled Mr. Brown's

car over, after the police officer, who was conducting surveillance in a high crime

area, observed Mr. Brown retrieve a shotgun from the trunk of his car and give it

to another individual. Mr. Brown argues that the police officer violated his

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1. After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Fourth Amendment rights by pulling his car over without having reasonable suspicion to justify an investigatory stop. We exercise jurisdiction under 28 U.S.C. § 1291 and conclude that under the totality of the circumstances the police officer had reasonable suspicion to stop Mr. Brown for an investigatory stop. Accordingly, we **AFFIRM** the district court's judgment.

## BACKGROUND

Around 3:30 a.m., while conducting surveillance of a convenience store located in a high crime area, long-time police officer James Yurkiewicz observed a white Cadillac pull into the store's parking lot. The driver, later identified as Kelvin Montgomery, got out of the Cadillac and entered the convenience store. Soon thereafter, Mr. Brown and his passenger, Levi Neef, pulled into the store's parking lot. Mr. Brown did not park his car near the store's door. Rather, he parked his car on the south side of the convenience store, where it was dark and out of the store clerk's view. Officer Yurkiewicz testified that Mr. Brown got out of his vehicle and walked toward the street, looking around as if he was looking to see whether any police cars, other vehicles, or other people were in the area.

Mr. Neef (Mr. Brown's passenger) also got out of the car and went to the Cadillac and got into the front driver's side seat. Mr. Montgomery then left the convenience store. Mr. Neef got out of the Cadillac, and Mr. Brown walked over to the men. They all began conversing. After talking for a few moments, Mr. Brown opened the trunk of his car, and the men looked at something in the trunk.

Mr. Montgomery then returned to his vehicle and moved it to a place near Mr. Brown's car.

Mr. Brown handed Mr. Montgomery a pump shotgun that he had gotten out of the trunk of his car. Mr. Montgomery looked over the shotgun and then handed Mr. Brown something. Mr. Montgomery placed the shotgun in the trunk of his car and then drove off. Mr. Brown and Mr. Neef got back into Mr. Brown's car and drove off. Neither Mr. Brown, Mr. Neef, nor Mr. Montgomery was wearing any hunting paraphernalia.

Concerned about what he thought could be a transfer of stolen property, a drug transaction, or a robbery setup, Officer Yurkiewicz called for backup and subsequently stopped Mr. Brown's car. During the stop, Officer Yurkiewicz had police dispatch run Mr. Brown's identification through the National Crime Information Center and discovered that Mr. Brown previously was convicted of a felony. Officer Yurkiewicz then arrested Mr. Brown for being a felon in possession of a firearm.

Mr. Brown was charged with being a felon in possession of a firearm. He moved to suppress the evidence seized as a result of the stop, claiming the stop was unlawful because the "officer had no cause to believe a crime had been committed or was being committed." R., Vol. I, Doc. 14, at 3 (Def.'s Mot. for an Order Suppressing Evidence, dated July 21, 2008). The district court denied the motion to suppress, finding that Officer Yurkiewicz had reasonable suspicion,

based on the totality of the circumstances, to effectuate the investigatory stop. Mr. Brown was convicted by a jury and sentenced by the court to a term of 30 months' imprisonment. This appeal followed.

## DISCUSSION

Mr. Brown contends that Officer Yurkiewicz violated his Fourth Amendment rights by pulling his car over without having reasonable suspicion to justify an investigatory stop. In reviewing a district court's denial of a motion to suppress,

> [w]e consider the evidence in the light most favorable to the prevailing party, here the government, and accept the district court's factual findings unless clearly erroneous. But, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo. The defendant bears the burden of establishing that the challenged stop violated the Fourth Amendment.

*United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006) (citations and internal quotation marks omitted); *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 933 (2008). Because we conclude that Officer Yurkiewicz's investigatory stop of Mr. Brown was supported by reasonable suspicion, we affirm.

"A law enforcement officer may stop and briefly detain a person for investigative purposes 'if the officer has a reasonable suspicion . . . that criminal activity 'may be afoot.'" *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see*

*United States v. Arvizu*, 534 U.S. 266, 273 (2002). In other words, the detaining officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007). "[W]e defer to trained law enforcement personnel, allowing officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Guerrero*, 472 F.3d at 787 (alteration and internal quotation marks omitted). We do not consider each factor adding up to reasonable suspicion individually; we look at the totality of the circumstances. *Arvizu*, 534 U.S. at 273; *Cortez-Galaviz*, 495 F.3d at 1205-06.

Applying this standard here, we conclude that reasonable suspicion supported the stop. Officer Yurkiewicz was a trained officer with nearly 30 years' experience. While conducting surveillance at 3:30 a.m. in a locale described as a high crime area, Officer Yurkiewicz observed suspicious conduct by Mr. Brown upon Mr. Brown's arrival at the scene. *United States v. Dennison*, 410 F.3d 1203, 1208 (10th Cir. 2005) ("[Defendant's] presence in a high-crime area is not, 'standing alone,' enough to provide reasonable suspicion, but it may be a 'relevant contextual consideration' in a *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] analysis." (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))). Mr. Brown parked out of the store clerk's view in a dark area of the parking lot. Mr. Brown

did not go into the store but instead walked to the street as if he was looking to see whether any police, cars, or other people were in the area. Officer Yurkiewicz then observed Mr. Brown meet with another individual (i.e., Mr. Montgomery)—in an apparent arranged meeting—during which Mr. Brown showed the individual something in his car trunk.

Mr. Brown then took a pump shotgun from his car trunk and gave it to the other individual in exchange for something. The participants in this transaction were not wearing hunting paraphernalia, which might suggest one legitimate reason for possession of the shotgun. Officer Yurkiewicz, concerned about what he thought could be a transfer of stolen property, a drug transaction, or set up for a robbery, called for backup and subsequently made an investigatory stop of Mr. Brown. Considering the totality of the circumstances, and giving due deference to the factual inferences drawn by an experienced and trained police officer, we conclude that Officer Yurkiewicz had a "particularized and objective basis" for suspecting that Mr. Brown was involved in criminal activity.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's judgment.


ENTERED FOR THE COURT



Jerome A. Holmes
Circuit Judge