**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

CHRISTOPHER CHEYENNE
CHAMBERS,

　　　Defendant - Appellant.

No. 09-8086
(D.C. No. 2:09-CR-00070-ABJ-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **CUDAHY**[**] and **TACHA**, Circuit Judges.

---

Officer Michael Hall of the Powell, Wyoming Police Department stopped

Christopher Chambers because he was driving without tail lights and without all of

his brake lights functioning. During his initial conversation with Chambers, Officer

Hall saw several knives in Chambers' vehicle. During the subsequent search of the

vehicle, Officer Hall found a pistol and drug paraphernalia. Because Chambers was

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]Honorable Richard D. Cudahy, of the Seventh Circuit Court of Appeals,
sitting by designation.

a felon, Officer Hall arrested him. The entire stop lasted approximately 14 minutes and 30 seconds. In this appeal, Chambers asks us to determine whether the officer's search was reasonable under the Fourth Amendment.

Chambers was charged by indictment with two counts: of being (1) a felon in possession; and (2) an unlawful user of a controlled substance in possession of a firearm. Chambers filed a motion to suppress based on Officer Hall's search of his vehicle. At the hearing on the motion, the district court found that the officer had reasonable safety concerns about the knives in Chambers' car. The district court therefore upheld the search as a protective sweep. It issued a written order denying Chambers' motion for the reasons stated on the record. Chambers entered a conditional plea of guilty to the felon in possession count; count two was dismissed. He was sentenced to 15 years' incarceration and three years of supervised release.

***

The search in question occurred around midnight in June 2008. Officer Hall saw Chambers' two-door sport-utility vehicle turn out of a bar parking lot with no working tail lights and only one working brake light. Officer Hall stopped Chambers' vehicle and asked Chambers about the lights and his license, registration and insurance.[1] Chambers did not have the vehicle's registration or a current insurance

---

[1] The traffic stop, including the officers' post-search conversation, was recorded on the officer's squad car camera and by Officer Hall's microphone. Some of the facts recited here are derived from the video, which is part of the record.

card.

As he was standing next to Chambers' door to discuss the problems with Chambers' lights, Officer Hall saw two six- to seven-inch knives in the front center console area, next to Chambers' arm. He asked Chambers to step out of the vehicle without the knives, Chambers reached for one, Officer Hall put his hand on his service weapon and then Chambers complied. Officer Hall directed Chambers to sit on the curb behind the vehicle. Officer Hall searched Chambers' vehicle for accessible weapons so that, eventually, Officer Hall could return Chambers to his vehicle with the knives placed where Chambers couldn't easily grab them as he got back in.

Officer Hall did not frisk Chambers, but asked Chambers if he had weapons on him and asked Chambers to pull back his shirt so Officer Hall could look at his waist area; Officer Hall saw no weapons. With Chambers sitting on the curb, Officer Hall returned to the car and found additional knives. Officer Hall interrupted the search to call for back up and to verify that Chambers' license was valid. He learned that Chambers was on probation for a methamphetamine-related felony and that his terms of probation included a curfew, which he was violating, and a prohibition on the use of drugs or alcohol.

Officer James Kelly arrived and administered a portable breath test to Chambers that came back negative. Officer Hall continued his search. After completing his search of the front part of the vehicle, Officer Hall then moved the

passenger's seat and, behind it, within reach of the driver's seat, he saw an open plastic shopping bag, containing a blue bag with a mesh section. Through the blue mesh bag, Officer Hall saw the handle of a firearm. Officer Hall confirmed with Chambers that the bag contained a pistol (Chambers initially expressed surprise that there was a pistol). Officer Hall also saw syringes, glass pipes or tubes in the blue bag. He told Chambers he was placing him in investigative detention. Chambers ran. The officers caught him and arrested him.

Chambers now appeals the district court's denial of his motion to suppress. He argues that his continued detention while Officer Hall cleared Chambers' vehicle of knives was unrelated to the traffic stop, exceeded the reasonable scope of the original stop and was not based on an articulable, reasonable suspicion that a crime was in progress.[2] We uphold the district court's determination.[3]

***

In reviewing the denial of a motion to suppress, we review factual findings of the district court for clear error, viewing the evidence in the light most favorable to the government, and review de novo the reasonableness of the government's actions under the Fourth Amendment. *See, e.g.*, *United States v. Fox*, 600 F.3d 1253, 1257

---

[2]The reasonableness of the initial stop was not at issue before the district court.

[3] Because we conclude that the officer's search was legitimately based on a protective search, we do not reach the parties' arguments about a search justified by Chambers' status as a probationer.

(10th Cir. 2010).

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *see also United States v. Palmer*, 360 F.3d 1243, 1246 (10th Cir. 2004). Traffic stops are potentially violent encounters and, therefore, if appropriate facts exist to justify an officer's concern, a search may be justified by safety considerations. *See, e.g.*, *Ariz. v. Johnson*, – U.S. –, 129 S. Ct. 781, 786 (2009) (discussing, *inter alia*, *Md. v. Wilson*, 519 U.S. 408, 414 (1997)); *United States v. Dennison*, 410 F.3d 1203, 1210-11 (10th Cir. 2005) (internal citations omitted). We conclude that the district court did not err in holding that the officers had a reasonable suspicion that Chambers was (1) dangerous and (2) may have gained immediate control of the weapons.

Chambers argues that he was not "dangerous," *inter alia*, because Officer Hall did not pat him down. The D.C. Circuit addressed a similar argument regarding the officer's decision to wait to pat down a suspect until after he had placed the defendant under arrest. *See United States v. Christian*, 187 F.3d 663, 669 (D.C. Cir. 1999). There, the court rejected the defendant's argument because the subjective fears, or lack thereof, of the police officer are irrelevant to whether the encounter is reasonable for purposes of the Fourth Amendment and because the court does not

second-guess police officers' decisions about how best to neutralize threats. *See id.* at 669-70; *see also Dennison*, 410 F.3d at 1213 (rejecting an analogous argument because the reasonableness inquiry is an objective one). We agree that Officer Hall's decision is not inconsistent with a reasonable, objective police officer's warranted "belief that his safety or that of others was in danger." *Dennison*, 410 F.3d at 1212 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). A vehicle filled with open knives and a driver's movement to grab one of the knives after the police officer told him not to is sufficient basis for a reasonable officer to conclude that placing the driver back in the vehicle with the weapons where they lay poses a danger to both the officer and the driver. *See, e.g.*, *Palmer*, 360 F.3d at 1246 (holding that officers had a reasonable suspicion that the suspect was "dangerous" because he was speeding in a school zone and a license check revealed him to be potentially armed and dangerous even though the police officer did not initially see any weapons in the car); *Christian*, 187 F.3d at 669 ("[T]he presence of one weapon may justifiably arouse concern that there may be more in the vicinity....").

In addition, the district court properly held that it was reasonable for the officers to conclude that Chambers could have gained immediate control of the knives. A suspect may be deemed able to gain access to a weapon even if he is outside the vehicle containing the weapons and under police control during part of the search. *See, e.g.*, *Long*, 464 U.S. at 1051-52; *United States v. Vinton*, 594 F.3d 14, 20-21 (D.C. Cir. 2010); *Palmer*, 360 F.3d at 1246-47 (upholding search when

suspect sitting in patrol car while the officers open his locked glove box); *see also Dennison*, 410 F.3d at 1213 (driver was handcuffed and behind the back of his truck during the search of the truck's cab but the court found that the suspect might gain access to the weapons in his vehicle). "The time period during which the detainee 'may gain immediate control' is the entire period from the initial stop to the detainee's departure." *Palmer*, 360 F.3d at 1246 (discussing *Long*). Chambers' vehicle had a number of knives, which Chambers acknowledged at oral argument were all within Chambers' reach if he were sitting in the driver's seat. In addition, unlike some of the defendants discussed above, Chambers was sitting on the curb without handcuffs and therefore could have stood up and grabbed the unsecured weapons in the vehicle. The officer's search was justified as a protective weapons search.

Chambers argues that the philosophy underpinning *Arizona v. Gant* affects this case. *Gant* held that it is only reasonable to conduct a vehicle search incident to a lawful arrest if the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search (or if evidence of the crime might be found in the vehicle). *Gant*, – U.S. –, 129 S. Ct. 1710, 1718-19 (2009); *United States v. McCane*, 573 F.3d 1037, 1040 (10th Cir. 2009). The goal of a protective sweep is, in part, to secure a vehicle so that when the defendant is *returned to the vehicle* he is not likely to injure the officers. It is that distinction between a search incident to an arrest and a protective sweep that makes *Arizona v. Gant* inapplicable.

*See Gant*, 129 S. Ct. 1710, 1721 (2009) (distinguishing *Long*); *Gant*, 129 S. Ct. at 1724 (Scalia, J., concurring) (clarifying that the holding of *Long* is undisturbed by *Gant*); *United States v. Vinton*, 594 F.3d at 24 n.3 (distinguishing *Gant* in the case of a protective sweep search); *United States v. Griffin*, 589 F.3d 148, 154 n.8 (4th Cir. 2009) (same). Chambers' arguments to the contrary are unavailing.

For the foregoing reason, the district court's order is affirmed.

ENTERED FOR THE COURT,

Richard D. Cudahy
Circuit Judge