**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SEPTEMBER HTOO,

    Defendant - Appellant.

No. 24-1387
(D.C. No. 1:23-CR-00308-DDD-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HOLMES**, Chief Judge, **EBEL**, and **CARSON**, Circuit Judges.

_____

An investigatory detention does not violate the Fourth Amendment if it is supported by reasonable suspicion. When we evaluate an officer's reasonable suspicion to detain an individual, we consider whether, under the totality of the circumstances, the officer is aware of particular and objective facts to believe that criminal activity may be afoot.

When law enforcement officers detained Defendant September Htoo, he voluntarily told them that he had a gun. Officers seized the weapon. Defendant later moved to suppress his statement and evidence that he possessed the gun after the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

government charged him with possessing a firearm as a felon. The district court denied the motion. Defendant appealed the denial, arguing that officers lacked reasonable suspicion to detain him and thus violated the Fourth Amendment.

Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

The Denver Police Department's Placed Network Investigations Unit focuses on gang activity. As part of this special unit, Officers Andrew Niccum and John Wickiser often patrol the area near East Colfax Avenue. One day while on patrol, they saw two men walking down the street in the opposite direction. Recognizing one of the men as She Ler Yer Lee—a known gang member with outstanding warrants—the officers turned their car around to get a better look. As they did so, the two men started running. The officers turned on their body-worn cameras and followed them. Officer Wickiser caught up with one of the men—Defendant September Htoo. He grabbed him and put him in handcuffs.[1] Defendant told the officers that he had a gun. Officer Niccum responded, "I know you got a gun, bro." Officer Niccum, who had previously arrested Defendant, asked him multiple times for his name. After Defendant finally provided his name, Officer Niccum asked, "What are you doing over here? You've got felony warrants buddy. You don't remember me? You should remember me." After retrieving the firearm from Defendant's waistband, Officer Niccum asked Officer Wickiser to run Defendant's

---

[1] The parties agree, for Fourth Amendment purposes, that officers detained Defendant when Officer Wickiser grabbed him.

name for outstanding warrants, explaining, "I know he has a felony robbery, I think. Or probation violation or something like that." Indeed, Defendant had multiple warrants, including one for violating probation. The officers arrested Defendant for being a felon in possession of a firearm and for his outstanding warrants.

Before trial, Defendant sought to suppress his statement that he had a gun and evidence that he possessed a gun. Defendant asserted that officers violated his Fourth Amendment rights. More specifically, he argued that the officers did not recognize him, did not know he had outstanding warrants, and did not otherwise have reasonable suspicion to detain him. The district court held a suppression hearing, at which Officers Wickiser and Niccum testified. The district court also reviewed footage of the encounter from the officers' body-worn cameras. From this evidence, the district court determined the officers had at least a strong suspicion that the man they were detaining was Defendant. The court also found that the officers otherwise had reasonable suspicion to detain Defendant. In so doing, it relied on several facts: that Defendant was walking with a known gang member in a high-crime area, that Defendant and Lee were on high alert "looking around very proactively" as if their heads were on a swivel, that Defendant ran from police, and that officers saw the imprint of a gun under Defendant's shirt. The district court determined that, under the totality of the circumstances, these facts gave rise to reasonable suspicion. Thus, the court denied Defendant's motion to suppress. Defendant timely appealed the district court's denial of his motion to suppress.

II.

"We look at the totality of the circumstances in reviewing the denial of the motion to suppress." United States v. Canada, 76 F.4th 1304, 1307 (10th Cir. 2023) (quoting United States v. Dennison, 410 F.3d 1203, 1207 (10th Cir. 2005)). "When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's finding of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." Id. (quoting United States v. Windom, 863 F.3d 1322, 1326 (10th Cir. 2017)). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." Id. (quoting United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017)).

Defendant challenges the district court's denial of his motion to suppress on two grounds. First, he argues that the district court clearly erred in finding that the officers had a "strong suspicion" that the man they were detaining was Defendant and that he had active warrants. Second, Defendant argues that the officers did not independently have reasonable suspicion sufficient to conduct a warrantless investigatory detention of Defendant. For the reasons below, we conclude that the officers had reasonable suspicion to detain Defendant. We therefore do not reach his first argument.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV.

4

An investigative detention qualifies as a seizure.  United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986).  Terry v. Ohio provides the framework for investigative detentions.  392 U.S. 1 (1968).  Under Terry and cases applying it, a stop is lawful at its inception if the officer has "articulable and reasonable suspicion that the person detained is engaged in criminal activity."  United States v. King, 990 F.2d 1552, 1557 (10th Cir. 1993) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).  Reasonable suspicion requires "a particularized and objective basis for suspecting criminal conduct under a totality of the circumstances."  United States v. Pettit, 785 F.3d 1374, 1378–79 (10th Cir. 2015) (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981) (internal quotation marks omitted)).  This standard is "not . . . onerous," id. at 1379 (quoting United States v. Kitchell, 653 F.3d 1206, 1219 (10th Cir. 2011)), with the level of suspicion required being "considerably less than proof by a preponderance of the evidence or that required for probable cause."  United States v. McHugh, 639 F.3d 1250, 1256 (10th Cir. 2011) (quoting United States v. Lopez, 518 F.3d 790, 799 (10th Cir. 2008) (internal quotation marks omitted)).  Under a totality of the circumstances approach, we do not view each fact or piece of evidence in isolation.  Id. (citing United States v. Salazar, 609 F.3d 1059, 1068 (10th Cir. 2010)).  We also "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions."  Id. (quoting United States v. Zubia–Melendez, 263 F.3d 1155, 1162 (10th Cir. 2001)).

In considering the totality of the circumstances, the district court relied on four facts to conclude that Officers Niccum and Wickiser had reasonable suspicion to

5

detain Defendant.  First, the officers saw Defendant walking with Lee—a known gang member and person of interest in a homicide case.  Second, the officers observed Defendant and Lee walking in a high-crime area, known to be the territory of Lee's rival gang.  Third, when the officers turned their patrol vehicle around to get a better look, Defendant and Lee took off running.  Finally, the officers saw the imprint of a gun under Defendant's shirt and that he was holding his waistband as he ran.

Defendant asserts that each of these facts does not amount to reasonable suspicion.  But Defendant discounts the totality of the circumstances approach that we take in reviewing reasonable suspicion.  Instead, he appears to contest the sufficiency of each fact in isolation.  Even though any one fact might be insufficient standing alone, together they give rise to reasonable suspicion.

Defendant urges us to ignore his proximity to Lee, a known felon.  In Defendant's view, the district court erred when it relied on his proximity to Lee by extending the common purpose or enterprise inference outside the vehicle context to support reasonable suspicion.[2]  This argument, however, mischaracterizes the district court's analysis.  In finding reasonable suspicion, the district court relied on

---

[2] We have used the common purpose or enterprise inference to support reasonable suspicion in cases like Dennison, 410 F.3d 1203.  There, the defendant was in a vehicle with a criminal suspect, and we determined that officers "could reasonably infer a common purpose or 'enterprise' between the two men and believe that Mr. Dennison knew of Mr. Allen's arrest warrants and would want to conceal evidence of any wrongdoing." Id. at 1213.  We do not address whether to expand this inference outside the vehicle context.

6

Defendant's association with Lee, a known gang member, as part of its totality analysis. It did not, as Defendant argues, view the fact as dispositive.

Likewise, we analyze whether Defendant's association with Lee, in addition to other objective facts, would raise a reasonable officer's suspicion that criminal activity is afoot. Here, the officers positively identified Lee as a known gang member—a fact that, although not determinative by itself, can bolster an officer's reasonable suspicion. United States v. Guardado, 699 F.3d 1220, 1223 (10th Cir. 2012) (quoting United States v. Garcia, 459 F.3d 1059, 1067 (10th Cir. 2006)). What's more, the officers did not describe two men on a casual stroll. Instead, they observed Defendant and Lee "looking around very proactively," as if "their heads were on a swivel," which made Officer Niccum "suspicious."[3]

Defendant also argues that we should not consider his presence in a high-crime area when the officers detained him because it could be used as a proxy for race or ethnicity.[4] A defendant's "presence in a high-crime area, alone, does not establish reasonable suspicion." Guardado, 699 F.3d at 1223. But an area's high crime rate is relevant to our totality of the circumstances analysis and supports the district court's denial of Defendant's motion to suppress. See Illinois v. Wardlow, 528 U.S. 119,

---

[3] To the extent Defendant urges us to reject the officers' testimony as lacking credibility, we decline to do so. The district court's reliance on the officers' testimony is consistent with our practice of deferring "to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." McHugh, 639 F.3d at 1256 (quoting Zubia-Melendez, 263 F.3d at 1134).

[4] Defendant concedes that the area in which he was detained was a "high crime area."

7

124 (2000) ("[W]e have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a <u>Terry</u> analysis."); <u>accord</u> <u>McHugh</u>, 639 F.3d at 1257; <u>Guardado</u>, 699 F.3d at 1223.  Here, we do not rely on this fact alone but, as we must, consider it alongside several others.

Defendant asks us, in considering that he initially ran from the officers, to also consider that he was walking when Officer Wickiser caught up to him.  He argues that changing his gait to a walk obviates any suspicion caused by his initial flight.  But as Defendant acknowledges, running from the police suggests wrongdoing and we may consider his flight in the totality of the circumstances.  <u>See</u> <u>id.</u> ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").  That he stopped running as the officers caught up to him does not erase the inference of criminal activity that his initial flight created.

Finally, Defendant urges us to disregard the officers' testimony that they saw the imprint of a gun under his clothes and that they saw Defendant holding his waistband—as if to hold on to a weapon—as he was running.  He argues that the officers' testimony is not credible because they did not put this information in their reports and never mentioned the imprinting on the body camera footage.  But the body camera footage does not contradict the officers' testimony that they saw imprinting or saw him hold his waistband.  Indeed, the footage possibly confirms this testimony, as Officer Niccum responded, "I know you got a gun, bro," when Defendant confessed to being armed.  And we are "loath to second-guess a district

court's determination of a witness's credibility." United States v. Asch, 207 F.3d 1238, 1243 (10th Cir. 2000) (citing Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)). "[V]iew[ing] the evidence in the light most favorable to the government," Canada, 76 F.4th at 1307, we may consider this evidence, as "possession of a firearm can contribute to existence of reasonable suspicion when combined with other facts." United States v. Young, 99 F.4th 1136, 1146 (10th Cir. 2023).

Under the totality of the circumstances, these facts support the district court's conclusion that an objectively reasonable officer would suspect that criminal activity is afoot. Thus, Officers Niccum and Wickiser had reasonable suspicion to detain Defendant, independent of whether they knew his identity or warrant status beforehand.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

9