FILED
United States Court of Appeals
Tenth Circuit

January 22, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JERRY DARNELL DAWSON, JR.,

    Defendant - Appellant.

No. 22-8064

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 1:20-CR-00178-ABJ-1)**
_____

Z. Seth Griswold, Assistant United States Attorney (Nicholas Vassallo, United States Attorney, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.

Keith Bradley (Chassica Soo with him on the briefs), of Squire Patton Boggs (US) LLP, Denver, Colorado, for Defendant-Appellant.

_____

Before **PHILLIPS**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Wyoming Highway Patrol Trooper Harley Kalb pulled over Defendant Jerry Dawson for speeding in a rental car. After issuing a speeding citation but before Defendant produced his rental agreement, Trooper Kalb discovered marijuana in plain view, searched Defendant's rental car, and seized two pounds of methamphetamine. We

consider here whether the Fourth Amendment permits an officer to prolong an otherwise completed traffic stop of a rental vehicle, absent reasonable suspicion, to determine whether the driver is authorized to drive the vehicle at the time of the stop.  Bound by *United States v. Cates*, 73 F.4th 795 (10th Cir. 2023), we hold that it does in this case.  Defendant also appeals his 70-month imprisonment sentence, arguing the district court erred in concluding it could not adjust his sentence to account for Defendant's pretrial time served for a relevant offense.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of Defendant's motion to suppress and dismiss Defendant's appeal of his sentence.

## I.

On October 12, 2020, Trooper Harley Kalb was patrolling Highway 50 in Campbell County, Wyoming.  Trooper Kalb observed a black Chrysler 300 sedan in the oncoming lane speeding to pass another vehicle.  He clocked its speed at 92 miles per hour by radar in a 70 miles per hour zone.[1]  Trooper Kalb made a U-turn and pursued the Chrysler.  When Trooper Kalb caught up to the Chrysler, the driver had already pulled over onto the shoulder.  Trooper Kalb activated his emergency lights and pulled in behind the Chrysler.

At approximately 9:52 a.m., Trooper Kalb exited his patrol car and approached the Chrysler from the passenger side.  He observed who would later be identified as Defendant Jerry Dawson in the driver's seat and Defendant's friend Bobby Dickerson in

---

[1] Trooper Kalb testified that Wyoming law only allows drivers to exceed the speed limit by ten miles per hour to pass.

the front passenger's seat. Trooper Kalb advised Defendant that he stopped him for speeding. Defendant responded that he was in a hurry because he was running out of fuel. Trooper Kalb asked for Defendant's license and vehicle documentation. Defendant turned over his driver's license and a registration card showing that Avis Car Rental ("Avis") owned the Chrysler. Defendant did not have documentation showing he rented the Chrysler from Avis but said he would ask his girlfriend to send his rental agreement to his phone.

Trooper Kalb invited Defendant back to his patrol car and Defendant agreed. Defendant sat in the passenger's seat. Trooper Kalb began preparing a speeding citation. After briefly discussing Defendant's travel plans, Trooper Kalb reiterated that he needed Defendant's rental agreement. Defendant offered to call Avis or his girlfriend to obtain his rental agreement. A few minutes later, at approximately 9:59 a.m., Trooper Kalb issued Defendant a speeding citation. Trooper Kalb explained that he was going to cut Defendant a break and cite him for travelling 75 miles per hour instead of 90 miles per hour. After handing Defendant the citation, Trooper Kalb once again explained he still needed to verify that Defendant rented the Chrysler in his name.[2] Defendant immediately called his girlfriend on speakerphone and asked her to send his rental agreement. About five minutes later, Defendant showed Trooper Kalb an email confirming that he reserved a rental car with Avis. Trooper Kalb testified that the email did not include the driver's

---

[2] Trooper Kalb testified that he issued the citation before receiving Defendant's rental agreement to complete the stop as quickly as possible. He had the documentation he needed to write the citation and intended to let Defendant go if and when he produced a valid rental agreement.

3

information, the vehicle's information, or the pick-up and return dates.[3]   As such, Trooper Kalb told Defendant he needed "the actual rental agreement."  Without more detail, Trooper Kalb could not confirm Defendant had lawful possession of the Chrysler at the time of the stop.  Defendant called his girlfriend back again to help locate his rental agreement.

At approximately 10:05 a.m., while still waiting for Defendant to locate his rental agreement, Trooper Kalb turned his attention to Defendant's low fuel level.  He testified that they were about twenty miles from the next town, and he wanted to determine whether he needed to secure additional fuel.  Trooper Kalb left Defendant in his patrol car and approached the Chrysler.  Dickerson was still seated in the Chrysler's passenger seat.  Trooper Kalb asked him to check the fuel gauge.  When Dickerson leaned over to check the fuel gauge, at approximately 10:06 a.m., Trooper Kalb observed what he believed to be a small bud of marijuana on the seat beneath Dickerson.  Dickerson admitted the substance was marijuana.  After this discovery, Trooper Kalb detained Defendant and conducted a search of the Chrysler.  He discovered two vacuum sealed

---

[3] There is some confusion in the record as to what exactly Defendant showed Trooper Kalb.  Defendant introduced as Exhibit A at the suppression hearing a multi-page cell phone screenshot of the Avis reservation confirmation email.  The full email shows Defendant rented a "Ford Mustang Coupe or similar" from the Las Vegas airport on October 3, 2020, and was scheduled to return the vehicle on October 8, 2020—four days before the traffic stop.  Trooper Kalb unequivocally testified that Defendant just showed him the body of the email, which only showed Defendant reserved a car with Avis and provided a confirmation number.  Curiously, the district court addressed the full email in its order denying Defendant's motion to suppress.  For our purposes, this discrepancy is irrelevant because neither the full nor partial email was sufficient to show Defendant was authorized to drive the Chrysler at the time of the stop.

bags containing 917 grams of methamphetamine inside the vehicle.  Defendant never provided a rental agreement to Trooper Kalb.

Defendant was indicted on one count of Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).  Defendant moved to suppress the fruits of Trooper Kalb's search in the district court.  He argued Trooper Kalb had no reasonable suspicion that Defendant was trafficking drugs and therefore, under *Rodriguez v. United States*, 575 U.S. 348 (2015), Trooper Kalb's authority to detain Defendant ended when he issued the speeding citation.  The court held an evidentiary hearing and denied his motion.  The court concluded that (1) Trooper Kalb was entitled to wait for documentation showing Defendant was authorized to drive the Chrysler at the time of the stop; and (2) Trooper Kalb developed probable cause for the search by discovering the marijuana *before* he received such documentation from Defendant.  After the court denied his motion, Defendant pleaded guilty subject to the lesser penalties provided under § 841(b)(1)(B).  The court sentenced Defendant to 70 months imprisonment followed by four years of supervised release—the low end of Defendant's Guidelines range.  Defendant now appeals the district court's denial of his motion to suppress and his sentence.

## II.

We turn first to Defendant's argument that Trooper Kalb violated the Fourth Amendment by unreasonably prolonging the traffic stop.  Defendant maintains that Trooper Kalb had no authority to detain him after issuing his speeding citation, and therefore the district court should have suppressed the methamphetamine discovered

5

afterward.  We disagree.  When reviewing a district court's denial of a motion to suppress, "we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous."  *United States v. Cates*, 73 F.4th 795, 805 (10th Cir. 2023) (quotation omitted).  "Further, we defer to all reasonable inferences made by law enforcement officers in light of their knowledge and professional experience distinguishing between innocent and suspicious actions."  *Id*. (quotation omitted).  "Ultimate determinations of reasonableness concerning Fourth Amendment issues and other questions of law, however, are reviewed de novo."  *Id*. (citation omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  A traffic stop constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  It is "thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."  *Id*. at 810.  "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id*. (citation omitted).  "A traffic stop must be justified at its inception and, in general, the officer's actions during the stop must be reasonably related in scope to 'the mission of the stop itself.'"  *United States v. Cone*, 868 F.3d 1150, 1152 (10th Cir. 2017) (quoting *Rodriguez*, 575 U.S. at 356)).  "Authority for the seizure thus ends when tasks tied to the traffic infraction are— or reasonably should have been—completed."  *Rodriguez*, 575 U.S. at 354 (citation omitted).

6

An officer's mission during a traffic stop includes addressing the traffic violation that warranted the stop *and* "ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 355. (citations omitted). These inquiries "ensur[e] that vehicles on the road are operated safely and responsibly." *Id*. (citation omitted). Activities that lack a "close connection to roadway safety," such as conducting a dog sniff for narcotics, are not part of an officer's traffic mission and must be supported by independent reasonable suspicion. *Id*. In other words, "officers may not divert from the mission of the [traffic] stop in order to conduct general criminal interdiction or investigate other crimes." *Cates*, 73 F.4th at 805 (quotation omitted).

Taken together, a lawfully initiated traffic stop becomes unreasonable "when an officer (1) diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct, (2) in a way that 'prolongs' (i.e., adds time to) the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion." *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022). Defendant does not dispute that Trooper Kalb had probable cause to believe Defendant was speeding and therefore lawfully initiated the traffic stop. The parties agree that Trooper Kalb extended the stop's duration by requiring Defendant to produce his rental agreement. The Government does not argue that Trooper Kalb developed reasonable suspicion of another offense. Thus, the dispositive question is whether Trooper Kalb's departed from his traffic-based mission by extending the stop to wait for Defendant's rental agreement.

7

Two of our recent decisions inform our analysis. We first touched on this issue in *United States v. Frazier*, 30 F.4th 1165, 1177 (10th Cir. 2022), a case that turned on reasonable suspicion rather than the scope of an officer's traffic stop mission. In *Frazier*, we held an officer did not have reasonable suspicion to extend the traffic stop of a rental car to conduct an investigative detour in the form of a dog sniff. *Id*. at 1180. To justify reasonable suspicion, the officer relied on several facts: there was a duffle bag in plain view in the defendant's car, the defendant had an air freshener bottle, and he only partially rolled down his window when the officer approached. *Id*. at 1176. The district court further cited the defendant's inability to find his rental agreement as support for reasonable suspicion. *Id*. at 1177. We concluded that the facts provided were insufficient to establish reasonable suspicion. *Id*. at 1178. We suggested that under different facts, however, a missing rental agreement may support continued detention for another purpose—to investigate a driver's authority to operate a rental vehicle. *Id*. at 1177.

We confronted such a situation in *United States v. Cates*, 73 F.4th 795, 807 (10th Cir. 2023). In *Cates*, an officer stopped the defendant for speeding in a rental car. *Id*. at 800. The defendant could not immediately locate his rental agreement. *Id*. Much like the instant case, the officer began drafting a speeding citation while the defendant searched his phone for his rental agreement. *Id*. As he worked on the citation, the officer texted another officer to arrange a dog sniff of defendant's rental car. *Id*. The canine alerted to the presence of methamphetamine shortly before Defendant produced a general email confirming that he had reserved a rental vehicle. *Id*. at 801. Citing *Frazier*, we

held the mission of the traffic stop remained ongoing because the defendant had not demonstrated his authority to drive the rental car before the dog alerted, and the officer therefore did not unlawfully prolong the stop.

Bound by *Cates*, we hold that Trooper Kalb did not divert from the traffic-based mission of the stop by detaining Defendant for the purpose of determining whether he was authorized to drive his rental car by rental agreement.  Checking a rental agreement is an "ordinary inquir[y] incident to the traffic stop" akin to inspecting a privately-owned vehicle's registration.  *Rodriguez*, 575 U.S. at 355 (quotation omitted).  The Supreme Court has noted registration requirements are "essential elements" of state roadway safety programs that, in conjunction with licensing requirements, ensure only those qualified to do so are permitted to operate motor vehicles.  *Delaware v. Prouse*, 440 U.S. 648, 658 (1979).  A rental agreement check is likewise closely tied to traffic enforcement and is properly characterized as part of an officer's "traffic mission" when he conducts a stop on a rental vehicle.  *Rodriguez*, 575 U.S. at 356.  It follows that a rental agreement check is not the kind of "unrelated investigation" that offends the Fourth Amendment when conducted in a way that lengthens the stop.  *Id*. at 354.  Thus, Trooper Kalb was justified in continuing to detain Defendant to determine whether he was authorized to drive the rental car because that inquiry was part of his mission during the traffic stop.

Defendant argues *Cates* is inapposite because here, Trooper Kalb issued Defendant a completed speeding citation before he discovered narcotics in the rental car. But the traffic stop did not end when Trooper Kalb issued Defendant's citation.  As the Supreme Court explained in *Rodriguez,* an officer's mission in a traffic stop includes *both*

9

deciding whether to issue a ticket *and* the ordinary tasks incident to the stop—in this case, determining whether Defendant was authorized to drive the rental car by rental agreement. *Rodriguez*, 575 U.S. at 355. Trooper Kalb told Defendant he needed his rental agreement at the outset of the stop, while he was drafting the citation, and immediately after he issued it. Each time, Defendant told Trooper Kalb he would secure the rental agreement himself with his girlfriend's help. Just like *Cates*, Defendant was only able to produce a general email confirming his reservation with Avis. That email was woefully insufficient to assure Trooper Kalb that Defendant had authorization to drive the Chrysler at that time. Three minutes later, while Defendant continued to search for his rental agreement, Trooper Kalb discovered marijuana in plain view in the Chrysler while checking its fuel level. Because Trooper Kalb did not have sufficient evidence that Defendant was authorized to drive the rental Chrysler at that time, his traffic-based mission remained ongoing, and he did not unlawfully prolong the stop. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

## III.

Defendant also argues the district court erred by holding it was precluded from departing downward to 60 months to adjust for Defendant's pretrial time served for a relevant offense in North Dakota. This court has no jurisdiction to review the district court's discretionary denial of a motion for downward departure. *United States v. Sierra-Castillo*, 405 F.3d 932, 936 (10th Cir. 2005). The only exception is if the denial is based on the district court's "interpretation of the Guidelines as depriving it of the legal authority to grant the departure." *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th

Cir. 2007) (citation omitted). "In making this determination, the district court is *presumed* to recognize its discretion, unless it unambiguously states it lacks discretion to grant the departure." *Id*. (emphasis added) (citation omitted). We find no such unambiguous statement and conclude the district court's denial was discretionary.

Police arrested Defendant for the instant offense in December 2020. The magistrate judge released Defendant with pretrial supervision in the District of North Dakota. On May 6, 2021, while on pretrial release, Defendant was arrested and taken into federal custody for two counts of Distribution of Fentanyl in North Dakota. Like the instant offense, Defendant possessed methamphetamine and counterfeit oxycodone pills containing fentanyl with intent to distribute. On May 2, 2022, the North Dakota district judge sentenced Defendant to a 361-day time served sentence. In November 2022, Defendant faced sentencing for the instant offense in the District of Wyoming. The district court found that Defendant's North Dakota offense involved relevant conduct to the instant offense under U.S.S.G. § 1B1.3(a)(2). As such, the drug quantities from Defendant's North Dakota offense were added to the quantities recovered from his Wyoming offense to calculate Defendant's instant offense level.[4]

At sentencing, Defendant was subject to a five-year (60 months) mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B)(viii) for possessing with intent to distribute fifty grams or more of a substance containing methamphetamine.

---

[4] Although the drug quantities from North Dakota were added, they did not increase Defendant's base offense level or Guidelines sentencing range. The United States Probation Office considered this in recommending against departing downward.

Defendant's Guidelines imprisonment range was 70 to 87 months. Defendant requested a 361-day downward departure pursuant to U.S.S.G. § 5K2.23 to account for his discharged sentence for relevant conduct in North Dakota.[5] The departure would have placed Defendant's sentence below the mandatory minimum imposed by § 841(b)(1)(B). The district court declined to depart downward, holding it lacked authority to sentence Defendant *below* 60 months because § 5K2.23 is an advisory Guidelines provision that cannot be used to override a statutory mandatory minimum without authorization from another statute. Defendant then requested a downward variance to the 60-month mandatory minimum. He argued that the reasoning in §§ 5G1.3 and 5K2.23 also supported a variance to 60 months and specified that his request was "based, in part, on the application" of those provisions. The district court determined that a downward variance was not warranted and sentenced Defendant to 70 months imprisonment.

Defendant does not challenge the district court's holding that it lacked authority to sentence him below the mandatory minimum.[6] Instead, he argues that the district court believed it lacked authority to adjust his sentence downward *to* the 60-month mandatory minimum under § 5K2.23. Defendant misinterprets the district court's ruling. The district court held it was precluded from applying § 5K2.23 to depart downward because

---

[5] Section 5K2.23 provides: "A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense."

[6] Defendant conceded at oral argument that he agrees with the Government's position that a departure below the 60-month mandatory minimum would be unlawful.

doing so would reduce Defendant's sentence *below* the mandatory minimum. All the district court's cited authority addresses using §§ 5K2.23 and 5G1.3 to depart *below* the mandatory minimum. Nothing in the district court's ruling suggests it believed it was precluded from departing *to* the mandatory minimum. Because the district court did not unambiguously state that it lacked authority to depart *to* the mandatory minimum, we treat the case "as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart." *Sierra-Castillo*, 405 F.3d at 936. (citation omitted). The district court's subsequent refusal to vary to 60 months on the same grounds further suggests its refusal to depart was discretionary. We lack jurisdiction to review a discretionary refusal to depart and therefore dismiss this portion of Defendant's appeal.

**\*\*\***

For the foregoing reasons, we affirm Defendant's conviction and dismiss his appeal of his sentence.