J-S13038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CALVIN MARQUIS TAYLOR | : | |
| | : | |
| Appellant | : | No. 141 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 3, 2023
In the Court of Common Pleas of Venango County Criminal Division at
No(s):  CP-61-CR-0000043-2022

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                     **FILED: MAY 16, 2024**

Calvin Taylor appeals from his judgment of sentence after a jury convicted him of burglary, firearms not to be carried without a license, criminal attempt to commit robbery, criminal trespass, escape, resisting arrest, and possession with intent to deliver fentanyl and acetyl fentanyl.[1]  He challenges the denial of his suppression motion and the sufficiency of the evidence to sustain his convictions for burglary and attempted robbery.  We affirm Taylor's convictions, vacate Taylor's sentence for escape, and otherwise affirm the judgment of sentence.

On January 14, 2022, Taylor was driving 90 miles per hour on a 65-mile-per-hour highway in Venango County.  The sun was setting, and the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 6106(a)(1), 901(a) and 3701(a)(1)(v), 3503(a)(1)(i), 5121(a), and 5104, and 35 P.S. § 780-113(a)(30).

temperature was approximately 15 degrees. Trooper Devin Seybert of the Pennsylvania State Police initiated a traffic stop. The suppression court found the following facts about the stop:

> [Taylor] used his left turn signal to pull[ ]over to the right side of the roadway in response to the lights and sirens of the police vehicle. Trooper [Seybert] approached [Taylor's] vehicle and noted the odor of marijuana as well as particles of marijuana in the vehicle. He also noticed that [Taylor's] hand was shaking, [Taylor] was extremely nervous and [there were] multiple cell phones in the vehicle. Further, the trooper noted that [Taylor's] eyes were glassy and bloodshot, and that the vehicle was a rental in a third party's name. [Taylor] was the sole occupant. [Taylor refused Trooper Seybert's requests to search the vehicle.]
>
> [Taylor] claimed to have a medical marijuana card and admitted to smoking marijuana within the [] hour preceding the traffic stop. The trooper noted that [Taylor] was "gutting" cigars to smoke the marijuana.
>
> [Trooper Seybert] had Advance Roadside [Impaired Driving Enforcement] training and more than 100 hours of training in narcotics investigations. The trooper was aware that it is illegal to smoke medical marijuana and unlawful to keep [it] in any other container besides the original dispensary packaging.
>
> The trooper conducted two field sobriety tests. He indicated that the temperature was around 15° and he did not wish to conduct any additional field tests with [Taylor]. [Trooper Seybert concluded that Taylor was under the influence of marijuana.]
>
> [Taylor] was then informed that he was under arrest on a charge of Driving Under the Influence. Upon hearing this, [Taylor] pushed away from the trooper and re-entered his vehicle and attempted to start it. As the trooper and an additional back-up trooper attempted to wrestle [Taylor] from the vehicle, he slipped through his shirt and fled on foot. Despite police pursuit, [Taylor] crossed the median and eluded the troopers.
>
> [Police obtained a warrant to search the vehicle. They found illegal drugs, an electronic scale, and a loaded gun.]

Memorandum Order, 6/27/22, at 1–3.

Taylor ran through the forest for nearly half an hour, eventually reaching the home of Nancy and John Lunnie. Taylor did not knock or ring the doorbell. He entered through the unlocked door. Mrs. Lunnie saw Taylor standing at the kitchen counter. Taylor told Mrs. Lunnie that he had been in an accident and needed help. Taylor asked to call his mother. Mrs. Lunnie said she would call the police; he told her not to. He refused her requests to leave.

Although Taylor denied touching her, Mrs. Lunnie recalled that Taylor tried to grab her phone in a "wrestling match" that left her bruised. Mr. Lunnie retrieved a gun and pointed it at Taylor. Taylor left the house and walked back to the highway. Trooper Seybert arrested him without further incident.

Trooper Seybert filed a criminal complaint against Taylor; the case was held for court. Taylor moved to suppress evidence derived from the traffic stop. The suppression court held a hearing on May 10, 2022, and it denied Taylor's motion on June 27, 2022.

On September 27 and 28, 2022, Taylor was tried before a jury. Taylor testified that when he entered the Lunnies' home, he was just looking for help and wanted to call his mother. The jury found Taylor guilty of all charges.

On November 18, 2022, the trial court sentenced Taylor to an aggregate term of 123 to 276 months of imprisonment. Taylor filed a timely post-sentence motion for reconsideration. The trial court heard Taylor's motion and amended Taylor's sentence to an aggregate of 105 to 228 months of imprisonment on January 3, 2023.

Taylor timely appealed. Taylor and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Taylor presents two issues for review:

Did the lower court err in denying the suppression of physical evidence where [Taylor] was the subject of an investigative detention, the police lacked even reasonable suspicion to detain [Taylor], and all evidence subsequently obtained was fruit of the poisonous tree?

Was not the evidence sufficient to sustain [Taylor's] conviction for burglary and attempted robbery beyond a reasonable doubt because the Commonwealth failed to prove that upon entry [Taylor] had the intent to commit a crime inside or deprive another of property?

Taylor's Brief at 5.

Taylor first challenges the denial of his motion to suppress evidence. He argues that Trooper Seybert unlawfully prolonged his detention by conducting field sobriety tests. Taylor suggests this was a pretext to search his car after he had refused consent to search.

We review the denial of a motion to suppress evidence to determine whether the record supports the suppression court's factual findings; we review the legal conclusions *de novo*. **Commonwealth v. Korn**, 139 A.3d 249, 253 (Pa. Super. 2016) (citation omitted).

For constitutional purposes, a traffic stop is a seizure (specifically, an investigative detention). **Commonwealth v. Spence**, 290 A.3d 301, 314 (Pa. Super. 2023). A traffic stop becomes unlawful if an officer needlessly prolongs it. **Rodriguez v. United States**, 575 U.S. 348 (2015).

The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate that purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

A traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete the mission" of issuing a warning ticket. An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to the traffic stop." Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Commonwealth v. Malloy*, 257 A.3d 142, 149–50 (Pa. Super. 2021) (quoting *Rodriguez*, 575 U.S. at 354) (brackets and ellipses omitted). Other courts have held that the "ordinary inquiries" of a stop of a rented vehicle can include a request for the rental agreement. *See, e.g.*, *United States v. Dawson*, 90 F.4th 1286, 1291–92 (10th Cir. 2024). We find this persuasive.

Importantly, a police officer may lawfully prolong a traffic stop, if the officer has developed a reasonable suspicion that the driver committed another offense. *Commonwealth v. Galloway*, 265 A.3d 810, 815–16 (Pa. Super. 2021). Reasonable suspicion depends on the totality of the

circumstances, including seemingly innocent factors, that the officer observed throughout the stop. *Id.* at 814–15.

Here, the suppression court properly ruled that when Trooper Seybert prolonged the stop, he had reasonable suspicion that Taylor was driving under the influence of marijuana. Trooper Seybert observed marijuana; Taylor had glassy, bloodshot eyes; and Taylor said that he had smoked marijuana in the previous hour.[2] Based on these circumstances, Trooper Seybert could lawfully prolong the stop to further investigate Taylor's possible impairment.[3] Taylor's first issue fails.

Taylor next challenges the sufficiency of the evidence to sustain his convictions for burglary and attempted robbery. He argues that there was no evidence of his intent for either offense.

"In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to

---

[2] Months after this incident, we determined that the legislature has not made an exception for driving with any amount of medical marijuana in one's blood. *Commonwealth v. Dabney*, 274 A.3d 1283, 1291–92 (Pa. Super. 2022). As the suppression court recognized here, it violates the Medical Marijuana Act to smoke medical marijuana or to keep unused medical marijuana outside of its original package. *See* 35 P.S. §§ 10231.303(b)(6), 10231.304(b)(1).

[3] Despite Taylor's contention that the investigation was a pretext to search his car, the reasonable suspicion "inquiry is an objective one." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1156 (Pa. 2000). The reasonableness of a traffic stop does not depend on the officer's actual motivations. *Whren v. United States*, 517 U.S. 806, 813 (1996).

conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." **Commonwealth v. Woodard**, 129 A.3d 480, 489–90 (Pa. 2015) (citation omitted).

As charged here, a person commits burglary if he enters a building or occupied structure "with the intent to commit a crime therein" when any person is present. 18 Pa.C.S.A. § 3502(a)(1)(ii). Forcible entry into an occupied structure, without other evidence, is insufficient to prove this intent. **Commonwealth v. Wilamowski**, 633 A.2d 141, 144 (Pa. 1993). Instead, we analyze the totality of the circumstances, including the defendant's actions once inside the structure. **Id.**; **see, e.g.**, **Commonwealth v. Baker**, 201 A.3d 791, 797–98 (Pa. Super. 2018).

Likewise, a person commits a criminal attempt "when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). Here, the crime Taylor allegedly intended to commit was robbery. "A person is guilty of robbery if, in the course of committing a theft, he: . . . physically takes or removes property from the person of another by force however slight." 18 Pa.C.S.A. § 3701(a)(1)(v).

The evidence at trial showed that Taylor ran from police custody at a traffic stop and entered the Lunnies' house unannounced. When Mrs. Lunnie confronted him, Taylor refused to leave, told her not to call the police, and struggled to grab her phone. We agree with the trial court that the jury could find that Taylor intended to commit a crime when he entered the house.

Specifically, the evidence supports a finding that Taylor intended to "aid his further escape from police." Trial Court Opinion, 9/20/23, at 8 (citing 18 Pa.C.S.A. § 5121(a)). Taylor knew that the police were pursuing him when he arrived at the Lunnies' home. Therefore, it is reasonable for the jury to find that Taylor intended to continue the offense of escape when he entered. N.T., 9/28/22, at 40, 42 (Taylor testifying he wanted help while "[running] from the cops"). We sustain Taylor's burglary conviction on this basis.

With respect to Taylor's conviction for attempted robbery, the jury could find that Taylor intended to commit a robbery by force when he tried to take Mrs. Lunnie's phone. The jury could believe Mrs. Lunnie's testimony that Taylor wrestled her for her phone, and it was not required to accept Taylor's testimony that his intentions were innocent.

Because the evidence, viewed in a light most favorable to the Commonwealth, supports findings of Taylor's criminal intent for the offenses of burglary and attempted robbery, Taylor's second issue fails.

We next address the legality of Taylor's sentence, which we may do *sua sponte*. **Commonwealth v. Armolt**, 294 A.3d 364, 376 (Pa. 2023) (citation omitted). Pennsylvania's burglary statute limits sentencing as follows:

> A person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

18 Pa.C.S.A. § 3502(d); **see Commonwealth v. Harris**, 409 A.2d 53, 54 (Pa. Super. 1979) (*per curiam*).

Here, we have sustained Taylor's burglary conviction only because the jury could have found that Taylor intended to complete his escape inside the Lunnies' house. Under Section 3502(d), Taylor's sentence for escape (a misdemeanor of the second degree) should have merged with his sentence for burglary. *Harris*, 409 A.2d at 54. We thus vacate Taylor's sentence for escape, which was concurrent to his sentence for burglary. This does not upset the trial court's sentencing scheme, so we leave Taylor's remaining sentence intact. *See Commonwealth v. Thur*, 906 A.2d 552, 570 (Pa. Super. 2006).

Convictions affirmed. Judgment of sentence vacated at Count 5 (18 Pa.C.S.A. § 5121(a), escape). Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/16/2024

- 9 -