FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 5, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TEON RAYNARD ROBBINS,

    Defendant - Appellant.

No. 24-7067
(D.C. No. 6:23-CR-00037-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

This appeal involves the constitutionality of a car search. The search

followed a traffic stop and canine sniff. By the time of the search, the

police had probable cause because a canine had sniffed the car and alerted

to drugs. *See United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180

(10th Cir. 1995) ("It is well established that in order to search a vehicle

without consent, a police officer must have either a search warrant or

probable cause."); *United States v. Kitchell*, 653 F.3d 1206, 1222 (10th Cir.

2011) (stating that it's well established that an alert from a reliable

---

[*]    This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

narcotics-detection dog gives rise to probable cause). The disagreement lies in what preceded the canine sniff.

The district court found that the police could have finished the traffic stop before the canine sniffed the car. But did the police have some other basis to extend the traffic stop? The district court answered *yes*, finding reasonable suspicion based on inconsistencies in what the driver and passenger had said when describing their travel plans. We conclude that the court erred in finding reasonable suspicion based on the alleged inconsistency.

1.    **A traffic stop leads to the discovery of methamphetamine in the car.**

The traffic stop took place in Oklahoma as Mr. Antwon Williams was driving Mr. Teon Robbins in a rental car. In the traffic stop, a trooper told Mr. Williams that he would get a warning for driving 4 miles-per-hour over the speed limit.

To prepare the warning, the trooper asked Mr. Williams to sit in the police car. As the trooper began writing the warning, he asked Mr. Williams how he was doing. Mr. Williams answered that he and Mr. Robbins were doing okay and were returning from seeing a cousin in Yukon, Oklahoma. The trooper followed up by asking: "You just go to Yukon?" Mr. Williams answered *yes*.

The trooper then approached Mr. Robbins, who was seated in Mr. Williams' car, and asked where the two men were coming from. Mr. Robbins said they had been all over for a couple of days, including California, Arizona, and New Mexico. The trooper asked the reason for the trip, and Mr. Williams answered that they were traveling to enjoy the scenery.

The trooper called another officer to oversee a canine sniff. The officer complied, and a canine alerted to drugs in the car. The officer then searched the car and found 100 pounds of methamphetamine. Mr. Robbins unsuccessfully moved to suppress evidence of the methamphetamine. With the denial of that motion, Mr. Robbins was convicted of possessing at least 500 grams of methamphetamine with intent to distribute. 21 U.S.C. § 841(a)(1), (b)(1)(A).[1]

## 2.    The alleged inconsistency doesn't create reasonable suspicion.

The validity of the conviction turns on whether the police should have let the two men go before the canine sniff. The district court concluded that the police had reasonable suspicion of drug dealing based on inconsistencies in what Mr. Williams and Mr. Robbins had said about their travel plans. *See United States v. Mayville*, 955 F.3d 825, 830

---

[1]    He was sentenced to 292 months' imprisonment.

(10th Cir. 2020) (stating that a traffic stop can be extended based on reasonable suspicion).

Suspicion is reasonable when the government identifies objective facts that would allow a trooper with training and experience "to believe that criminal activity is afoot." *United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017). This inquiry includes some components that are legal, some that are factual. *United States v. Salazar*, 609 F.3d 1059, 1063–64 (10th Cir. 2010). For the factual components, we apply the clear-error standard to the district court's findings. *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010). When we review the district court's factual findings for clear error, we view the evidence in the light most favorable to the ruling. *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022). And for the district court's legal conclusions, we conduct de novo review. *Simpson*, 609 F.3d at 1146. Based on our legal conclusions, we conduct de novo review over the reasonableness of the trooper's suspicion. *Ornelas v. United States*, 517 U.S. 690, 691 (1996). For the inquiry, the government bears the burden to establish that the trooper's suspicion was reasonable. *Simpson*, 609 F.3d at 1146.

An inconsistency in travel plans can contribute to reasonable suspicion. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998). Here, however, the district court relied solely on the inconsistency when finding reasonable suspicion. The resulting issue is whether the

inconsistent description of travel plans was enough by itself for reasonable suspicion.

A trooper can reasonably suspect criminal activity when a driver and passenger lie about their travel plans. *United States v. Simpson*, 609 F.3d 1140, 1148–49 (10th Cir. 2010). But arguable inconsistencies may sometimes be innocent: A person might mishear a trooper's question, might think the travel plans are none of the trooper's business, might misremember details of a trip, or might be confused. *See United States v. Santos*, 403 F.3d 1120, 1131–32 (10th Cir. 2005) (discussing innocent explanations for inconsistencies in travel plans).[2]

When an inconsistency indisputably shows that the driver or passenger is lying, a trooper's suspicion may be reasonable. *United States v. Wallace*, 429 F.3d 969, 976 (10th Cir. 2005). For example, in *United*

---

[2]    Defense counsel argues that confusion was likely here because

- the trooper jumped between topics and

- the two men were distracted by an ongoing phone call, a search for the car's rental agreement, and the reason for the traffic stop when they were going just 4 miles-per-hour over the speed limit.

Distractions could diminish the impact of an inconsistency. *United States v. Frazier*, 30 F.4th 1165, 1175–76 (10th Cir. 2022). But we need not consider the possibility of a distraction because the inconsistency wouldn't create reasonable suspicion even if Mr. Williams and Mr. Robbins had been focusing solely on the trooper's questions.

*States v. Wallace*, we addressed two inconsistencies involving the relationship between a driver and passenger and what they were transporting:

1.    The driver said that he and the passenger were cousins, and the passenger said that they weren't related.

2.    The driver said that they were transporting a Yamaha motorcycle, but it was actually a Honda.

*Id.* We concluded that these inconsistencies could create reasonable suspicion. *Id.*

On the other hand, we've said that arguable inconsistencies can't provide the sole basis for reasonable suspicion. An example took place in *United States v. Santos*, 403 F.3d 1120 (10th Cir. 2005). There the driver said that

- he was driving from California to New York to pick up his sister, later saying that the sister was actually a half-sister and was "hopefully" going to come with him;

- his mother lived in New York, but he didn't know her phone number; and

- he said that he was going for about a week, then said it was 3 to 5 days, then said 4 or 5 days.

*Id.* at 1130–31. We said that these inconsistencies could contribute to reasonable suspicion, but wouldn't be enough in themselves. *Id.* at 1131–32.[3]

---

[3]    We have also said that a court couldn't base reasonable suspicion on the implausibility of travel plans. *United States v. Leon*, 80 F.4th 1160,

6

How do we characterize the inconsistency of statements by Mr. Williams and Mr. Robbins? Is the inconsistency indisputable (as in *Wallace*) or arguable (as in *Santos*)? The question lacks well-defined answers in our case law. So we must proceed inductively by comparing the inconsistencies that we classified differently in *Wallace* and *Santos*. *See United States v. Tapia*, 309 F.3d 1283, 1288 (10th Cir. 2002) (adopting the government's approach of "inductive reasoning by analogy" and concluding that the same legal consequence should apply when another case provides a proper factual analogue).

Through this inductive approach, we regard *Santos* as the closer fit. There the driver's description of his trip to New York contained inconsistencies, but we didn't regard those inconsistencies as enough in themselves to create reasonable suspicion. *See* p. 6, above. Here, too, Mr. Williams and Mr. Robbins described their trip differently: Mr. Williams said they had just gone to Yukon; Mr. Robbins said they had been to various places, including California, Arizona, and New Mexico. *See* pp. 2–3, above.

But these descriptions of the trip weren't mutually exclusive. They could have just gone to Yukon, Oklahoma, after traveling to California,

---

1165–66 (10th Cir. 2023); *United States v. Simpson*, 609 F.3d 1140, 1152 (10th Cir. 2010).

Arizona, and New Mexico. After all, Mr. Robbins was obviously not denying that they had been to Oklahoma: they were stopped there, less than a half-hour away from Yukon, Oklahoma, where Mr. Williams said that they had just been. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1215 n.6 (10th Cir. 2020) (taking judicial notice of distance).

The government disagrees, arguing that the descriptions were mutually exclusive because Mr. Williams said that they had gone only to Yukon.[4] But the trooper's question was ambiguous: "Did you just go to Yukon?"[5] Mr. Williams could have interpreted the question two different ways:

1.      Was Yukon their only stop on the trip?

2.      Was Yukon their most recent stop?

With the second interpretation of the question, Mr. Williams' answer would have matched Mr. Robbins'. We thus regard the alleged inconsistency on a par with the inconsistencies in *Santos*. There "the

---

[4]      The government also argues that Mr. Williams was evasive and took suspicious pauses. But the district court didn't base its ruling on evasiveness or pauses.

[5]      The government insists that the trooper asked Mr. Williams "if he had been anywhere other than Yukon and Williams told him no." Government's Resp. Br. at pp. 33–34. This account doesn't appear in the video or in the trooper's testimony.

inconsistencies and gaps" in the driver's account of the trip "were not so significant that they would arouse genuine suspicion in the absence of other indications of wrongdoing." *United States v. Santos*, 403 F.3d 1120, 1131 (10th Cir. 2005). The same is true here given the uncertainty on how Mr. Williams interpreted the question.

Granted, some parallels exist with the indisputable inconsistencies in *Wallace*. There the driver said that the passenger was a cousin; the passenger said that they were friends rather than relatives. *United States v. Wallace*, 429 F.3d 969, 976 (10th Cir. 2005). Similarly, Mr. Williams said that the passenger was an uncle; the passenger said he was close but not a relative. But the district court didn't rely on this discrepancy in the accounts.

In *Wallace*, the driver also said that he was driving his own motorcycle, but got the brand wrong: He said it was a Yamaha, and it was a Honda. *Id.* The significance of that discrepancy is open to debate. But the driver was unmistakably wrong about the brand of his own motorcycle. Here the inconsistency stemmed from an inherent ambiguity in what Mr. Williams and Mr. Robbins were describing: Mr. Williams could have been describing their most recent destination, and Mr. Robbins could have been describing their earlier travels. Given this ambiguity, the combination of statements more closely resembles the arguable inconsistencies in *Santos* than the indisputable mistake in *Wallace* about the brand of the

9

driver's motorcycle. We thus conclude that the district court erred in basing reasonable suspicion on the inconsistency in travel plans.

### 3.    We lack a clear and indisputable basis to affirm on alternative grounds.

The government argues that we should affirm anyway because

- other grounds existed to render the trooper's suspicion reasonable and

- the trooper didn't need reasonable suspicion because the canine alerted to the car while the traffic stop was in progress.

Though the district court didn't rely on these grounds, we can rely on them to affirm if they would clearly and indisputably justify the denial of the motion to suppress. *See United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022) ("We may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." (quoting *United States v. Schneider*, 594 F.3d 1219, 1227–28 (10th Cir. 2010))). Here the government's arguments aren't clear or indisputable.

#### a.    Other grounds for reasonable suspicion

The government argues that the trooper's suspicion was reasonable because Mr. Williams acted nervously and had a child's photo on his dashboard. The district court concluded that these factors didn't support the trooper's suspicion.

Nervousness can contribute to reasonable suspicion, but only when the nervousness is extreme. *United States v. Lopez*, 849 F.3d 921, 925–26

10

(10th Cir. 2017). When the nervousness isn't extreme, it doesn't contribute to reasonable suspicion because interaction with the police can make even innocent people nervous. *United States v. Cortez*, 965 F.3d 827, 835 (10th Cir. 2020).

The trooper testified that he regarded Mr. Williams as nervous because he had crossed his arms, had a rapid heartbeat, chewed his lips, and said "uh" before answering questions. R. at 127–28. The district court viewed the video of the questioning and didn't see the signs of nervousness from Mr. Williams' crossing his arms, rapid heartbeat, or beginning answers with "uh." *Id.* at 50, 179. We could affirm on this ground only if these characteristics clearly and indisputably supported reasonable suspicion. *See* p. 10, above.

Mr. Williams did bite his lip as he talked to the trooper, and a trooper could regard this behavior as a sign of nervousness. But would it signal extreme nervousness? We've concluded that the nervousness could be extreme when motorists shake uncontrollably, tremble, talk with a shaky voice, and twitch their lips. *United States v. Simpson*, 609 F.3d 1140, 1148 (10th Cir. 2010) (shaking uncontrollably); *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (hands trembling, voice shaking, and lips twitching).

For the sake of argument, we can assume that a district court could infer extreme nervousness when Mr. Williams bit his lip. But the district

court didn't draw that inference. At this stage, the question is whether the district court clearly and indisputably erred in declining to infer extreme nervousness from Mr. Williams' biting his lip. Even if the district court had drawn the wrong inference, the error wouldn't be clear enough for us to affirm on this ground.

The trooper relied not only on nervousness but also on the presence of a child's photo on the dashboard. R. at 126. The trooper regarded the photo as suspicious because it could have served as a reminder to Mr. Williams about the reason for his "mission." *Id.* The district court regarded this reasoning as "largely illusory." *Id.* at 50–51.

Perhaps the trooper's skepticism was right. But even if the trooper had been right, we can't say that the district court should clearly have regarded the photo as a reason to suspect criminality.

We thus conclude that the government's additional arguments for reasonable suspicion are not clear and indisputable.

### b.   Continuation of the traffic stop

The government also argues that the trooper could search the car because he was still writing the warning when the canine alerted to drugs. The district court rejected this argument, reasoning that the trooper could have completed the traffic stop before the canine alerted.

To write the warning, the trooper could ask questions about the trip. *United States v. Alearaz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006).

Through that questioning, the trooper learned that Mr. Robbins had rented the car; and that information allowed the trooper to keep Mr. Robbins long enough to confirm the rental. *See United States v. Dawson*, 90 F.4th 1286, 1288, 1292 (10th Cir. 2024). But the trooper couldn't continue the stop based on a mere hunch that the two men were dealing drugs. *Rodriguez v. United States*, 575 U.S. 348, 356–57 (2015).

The district court found that the trooper could have finished the warning by the time the canine alerted. On appeal, the government challenges this finding and Mr. Robbins defends it.[6]

The district court's finding is factual, triggering review under the clear-error standard. *United States v. Batara-Molina*, 60 F.4th 1251, 1256 (10th Cir. 2023). To apply this standard, we consider the testimony. The trooper testified that

- Mr. Williams' license had provided him with everything necessary to complete the warning,

- he possibly could have finished writing the warning in 3 to 4 minutes, and

---

[6]    In two footnotes, the government argues that Mr. Robbins waived a response by omitting the discussion in his opening brief. Government's Resp. Br. at 19 n.9; 25 n.12. The government is mistaken. Mr. Robbins had no reason to raise this issue in the opening brief because he agreed with the district court's finding. Once the government argued that we should affirm on an alternative ground, Mr. Robbins could respond in a reply brief. *See United States v. Brown*, 348 F.3d 1200, 1212–13 (10th Cir. 2003) ("When an appellee raises in its answer brief an alternative ground for affirmance, the appellant is entitled to respond in its reply brief.").

- he needed only to print the warning and give it to Mr. Williams after seeing the rental agreement.

Given this testimony, the district court could reasonably find that the trooper had kept Mr. Williams longer than necessary to complete the traffic stop.

The government disagrees, arguing that the district court should have credited the trooper's diligence and his testimony that he had continued working on the warning even after the canine alerted. For the sake of argument, we can assume—without deciding—that the court should have found that the trooper hadn't delayed the traffic stop. But we can't say that the district court clearly and indisputably erred in its fact-finding. *See* p. 10, above (stating that affirmance on alternative grounds must be clear and indisputable); p. 13, above (stating that clear error is required to disturb a district court's factual findings).

## 4.    Conclusion

The district court erred in denying Mr. Robbins' motion to suppress. Probable cause arose from the canine alert, but that alert was possible only because the trooper had delayed the traffic stop. That delay wouldn't matter if the trooper had reasonable suspicion, but he didn't.

The district court based that suspicion on an inconsistency in how Mr. Williams and Mr. Robbins had described their travel plans. But the two men were answering different questions. Mr. Robbins said where they had

14

been, and Mr. Williams was answering where they had "just" stopped. At most, the answers constituted the sort of arguable inconsistency that we've regarded as insufficient for reasonable suspicion. So we reverse the denial of Mr. Robbins' motion to suppress and remand for further proceedings.

Entered for the Court


Robert E. Bacharach
Circuit Judge