**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RENE SALCIDO-GONZALEZ,

    Defendant - Appellant.

No. 25-4015
(D.C. No. 4:23-CR-00049-AMA-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **EID**, and **CARSON**, Circuit Judges.[**]
_____

If after examining a case, counsel determines that any appeal would be wholly frivolous, we may allow counsel to withdraw. But before we do, counsel must present a brief to the client and to us indicating any potential appealable issues. If, after a full examination of the record, we conclude that the appeal is frivolous, we may grant counsel's motion to withdraw and may dismiss the appeal.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Here, counsel examined the case and filed a brief. After fully examining the record and considering the brief, we conclude no non-frivolous issues exist upon which Defendant may appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Early one morning, Defendant Rene Salcido-Gonzalez drove a Toyota truck eastbound on Interstate 70 in Utah. He passed Deputy Mike Miller, who sat in his marked patrol car in the median. Miller didn't clock Defendant's speed, but he estimated Defendant was driving the speed limit, about 80 miles per hour. But, Defendant slowed to 65 miles per hour upon seeing Miller's marked patrol car. As he passed, Defendant leaned back in his seat in an apparent attempt to shield his face from Miller. Miller found this suspicious. He also noticed the truck bore a red and white Colorado license plate—which identified it as a rental vehicle. After making these observations, Miller followed Defendant. Miller pulled up beside Defendant, who yawned and raised his left hand to his face.

Miller then ran a license plate check—confirming the truck's rental status. He then entered the plate into a license-plate reader, or LPR, to see where the vehicle had traveled. The truck had been in Denver two days earlier. The day before, it was in Nevada near the California border. Miller observed that the truck had moved about seven hours in a nine-hour period. This suggested a quick round trip between California and Colorado in two days.

2

Defendant continued along I-70 with Miller following. Miller approached a construction zone where signs directed drivers to merge into the left lane. As Defendant approached the construction zone, he signaled to merge. But his signal violated the law. Utah law requires drivers to signal for at least two seconds. Defendant activated his signal for less than two seconds. As he changed lanes, Defendant drifted left and crossed outside of the traffic lane. Over the next mile in the construction zone, he veered outside his lane four or five more times. Miller didn't pull Defendant over immediately due to traffic safety concerns.

They then entered into a second construction zone. Defendant merged from the right to the left lane—this time more abruptly than the last and again without the two-second signal. After the second construction zone, Miller stopped Defendant for failing to signal for the requisite two seconds when changing lanes and for failing to maintain his lane of travel in the first construction zone. No video exists of the traffic violations.

During the stop, Defendant could not locate the rental agreement. As he continued to look for it, Miller asked Defendant to come back to the patrol car so that he could give dispatch Defendant's driver's license. Three minutes into the stop, the two got into Miller's patrol vehicle. Defendant showed Miller his phone, which displayed part of the rental agreement. The portion of the agreement showed the return date, but not the authorized drivers or the date Defendant's girlfriend rented the vehicle. Miller asked to see the full rental agreement to confirm that Defendant lawfully possessed the vehicle.

While waiting on the results of the driver's license from dispatch, and six minutes after the stop, Miller told Defendant that he planned to run his dog around the truck. Miller had not yet written a citation. Both exited the patrol car. Miller told Defendant to get back in the patrol car and wait, but he didn't listen. Miller gave Defendant three choices: (1) wait in the patrol car; (2) wait in front of the rental; or (3) wait on the shoulder of the road. Defendant stood on the shoulder of the road.

Seven minutes into the traffic stop, the dog began alerting to narcotics. As the dog began to alert, Defendant stepped away from the shoulder and moved directly behind Miller. Miller pulled his dog off the alert to move Defendant back to the shoulder. Miller restarted the dog sniff, and the dog provided a final indication to the odor of narcotics in the truck. Miller searched the truck and found 100 pounds of methamphetamine and a gram of cocaine.

The government charged Defendant with possessing methamphetamine with the intention of distributing it in violation of 21 U.S.C. § 841(a)(1). Defendant moved to suppress the results of the search. The district court denied the motion. The district court determined that each traffic violation Miller witnessed created reasonable suspicion of a traffic violation sufficient to warrant the stop. The district court also found that Miller's use of the LPR did not violate the Fourth Amendment, or Utah state law. The district court did not assess the validity of the stop. Finally, the district court found that the dog sniff did not extend improperly the duration of the traffic stop because Miller was still waiting on dispatch to return pertinent driver's license information related to the traffic stop when he ran his dog.

4

Defendant pleaded guilty and the district court sentenced him to ninety-six months' imprisonment.  Defendant appealed.

## II.

In Anders v. California, 386 U.S. 738 (1967), the Supreme Court authorized "counsel to request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous."  United States v. Calderon, 428 F.3d 928, 930 (10th Cir. 2005) (citing Anders, 386 U.S. at 744).  Counsel must present a brief to the client and to us indicating any potential appealable issues.  Id.  Defendant's counsel reviewed the trial record and found no nonfrivolous ground for appeal.  Counsel therefore submitted an Anders brief, listing three potential issues for appeal as well as a motion to withdraw as counsel.  Defendant submitted no additional argument.  Anders requires that "we conduct a full examination of the record to determine whether [D]efendant's claims are wholly frivolous."  Id.  If we conclude the appeal is frivolous, we may grant counsel's motion to withdraw and dismiss the appeal.  Id.

The Anders brief first presents Defendant's argument that he didn't violate Utah law requiring a driver to signal for two seconds before changing lanes.  Second, the brief sets forth Defendant's argument that Miller's use of the LPR violated the Fourth Amendment and Utah law.  Third, and finally, the brief argues that Miller extended the length of the stop to run a drug dog.  We address each argument in turn.

## A.

"We look at the totality of the circumstances in reviewing the denial of the motion to suppress." United States v. Canada, 76 F.4th 1304, 1307 (10th Cir. 2023) (quoting United States v. Dennison, 410 F.3d 1203, 1207 (10th Cir. 2005)).  When we review the denial of a motion to suppress, "we view the evidence in the light most favorable to the government, accept the district court's finding of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment."  Id. (quoting United States v. Windom, 863 F.3d 1322, 1326 (10th Cir. 2017)).  "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made."  Id. (quoting United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017)).  We also "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions."  Id. (quoting Dennison, 410 F.3d at 1207).

A traffic stop is a seizure under the Fourth Amendment.  United States v. Dawson, 90 F.4th 1286, 1290 (10th Cir. 2024) (citing Whren v. United States, 517 U.S. 806, 809–10 (1996)).  But an "observed traffic violation or a reasonable suspicion of such a violation under state law plainly justifies a stop." United States v. Gregoire, 425 F.3d 872, 876 (10th Cir. 2005) (citing United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995)).

Miller testified that Defendant did not use his signal for the two seconds Utah law requires before lane changes.  Utah Code Ann. § 41-6a-804(1).  Defendant cross-examined Miller and disputed the reliability of his testimony in his briefing.  The

district court, however, found that Miller "observed [Defendant] change lanes twice without a proper signal." The district court credited Miller's testimony that Defendant signaled for only three-quarters of a second before the first construction area. The district court also accepted Miller's account of Defendant's second lane change—an abrupt, less-than-one-second turn signal use. We defer to the trial court's findings on witness credibility. See Anderson v. City of Bessemer City, N.C, 470 U.S. 564, 575 (1985) (recognizing that findings based on witness credibility determinations demand even greater deference) (citing Wainwright v. Witt, 469 U.S. 412 (1985)).

Put simply, the record supports the district court's decision. Because Miller observed Defendant violate Utah traffic law twice, Miller's decision to stop the truck was reasonable under the Fourth Amendment. Botero-Ospina, 71 F.3d at 787.

B.

Defendant next argues that Miller's use of the LPR was unreasonable under the Fourth Amendment because of its ability to generate mass amounts of information, which are then aggregated and analyzed together. We need not determine whether Miller's use of the LPR violated the Fourth Amendment. The district court found that Miller observed traffic violations, which provided him with reasonable suspicion for the traffic stop. Even if using the LPR violated the Fourth Amendment, Defendant could not show that Miller would not have discovered the drugs if he had not used the LPR. Miller would have stopped Defendant for the traffic violations and law enforcement would have discovered the drugs. We have

7

recognized that a court may suppress evidence as fruit of the poisonous tree when a defendant can show the evidence that they seek to suppress would not have emerged but for the government's unconstitutional conduct. United States v. Suggs, 998 F.3d 1125, 1142 (10th Cir. 2021) (quoting United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000)).

C.

Finally, Defendant contends that Miller prolonged the traffic stop with the dog sniff. To carry out a stop, an officer can check a driver's license, determine whether outstanding warrants existed, and inspect proof of insurance. Hoskins v. Withers, 92 F.4th 1279, 1287 (10th Cir. 2024) (citing Rodriguez v. United States, 575 U.S. 348, 355 (2015)). Miller did not begin the dog sniff until he asked dispatch to run Defendant's license. And the dog alerted before dispatch got back to Miller. In Hoskins, we held that officers did not prolong a traffic stop by conducting a dog sniff when they carried out the dog sniff after asking dispatch to check on warrants and the status of the defendant's driver's license and finished before dispatch reported back. Id. at 1288. Because these same circumstances exist here, the dog sniff did not prolong the traffic stop.

After a full examination of the record and consideration of the <u>Anders</u> brief, we determine no non-frivolous issues exist upon which Defendant has a basis for appeal.  We thus GRANT Defendant's counsel's motion to withdraw as counsel.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge